[L. A. No. 1291. Department Two.—October 10, 1903.]

MARY MATTHEWS, Executrix, etc., Appellant, v. HENRY ORMERD and MARY JANE ORMERD, Defendants; GEORGE GOODWIN, Intervener, Respondent.

MORTGAGE—ILLEGAL AGREEMENT FOR PAYMENT OF TAXES BY MORTGAGOR —USURY—WAIVER BY MORTGAGOR.—The provision of section 5 of article XIII of the constitution prohibiting a contract for the payment of taxes on a mortgage debt by the mortgagor, and forfeiting interest for violation thereof is in its nature and elements a usury law for the benefit of the debtor alone, who may waive it, and if he pays the interest he cannot recover it back.

ID.—PURCHASE "SUBJECT TO MORTGAGE"—REDEMPTION—PAYMENT OF INTEREST—RECOVERY BACK NOT ALLOWED.—One who purchases the mortgaged premises from the mortgagor expressly "subject to the mortgage," cannot set up a taint of usury in the mortgage; and where he paid the full amount of principal and interest on redemption of the premises from sale under foreclosure he cannot recover back the interest paid, on the ground that the mortgagor was unlawfully required to pay the tax on the mortgage debt.

APPEAL from a judgment of the Superior Court of San Diego County and from an order denying a new trial. N. H. Conklin, Judge.

The facts are stated in the opinion of the court.

Lloyd & Wood, and Haines & Ward, for Appellant.

Edwin A. Wells, and George H. P. Shaw, for Intervener, Respondent.

McFARLAND, J.—This action was originally instituted by Henry Matthews upon a note and mortgage executed to him by the defendants Henry Ormerd and Mary Jane Ormerd. A *lis pendens* was filed at the commencement of the action. Soon afterwards Henry Matthews died, and the action has been prosecuted by his executrix, Mary Matthews, who was substituted as plaintiff. The defendants did not deny the execution of the note and mortgage set forth in the complaint; but they averred in their answer that at the time of the execution of the mortgage the parties executed another

written instrument which defendants averred to be an agreement that defendants should pay the taxes on the mortgage debt, in violation of section 5 of article XIII of the state constitution; and the prayer is, that it be decreed that plaintiff has no right to recover any interest upon the amount found to be due on the note and mortgage. The court below, at the first trial, held that there was no violation of said provision of the constitution, and rendered judgment for plaintiff for the full amount of the principal and interest as specified in the note. From that judgment the defendants appealed, and this court reversed the judgment upon the ground that the facts shown did constitute a violation of the said section of the constitution, and that plaintiff was not entitled to recover any of the interest specified in the note.

In the mean time, however,—no stay-bond on appeal having been given,—the mortgaged premises were regularly sold under the foreclosure, by a commissioner appointed for that purpose, and was purchased by the plaintiff for the full amount of the judgment. Afterwards one George Goodwin— who afterwards appeared in the case as intervener, claiming to be a grantee of the mortgaged premises,—redeemed from said sale, by paying to the commissioner, for plaintiff, the full amount of the purchase price, with legal percentage, etc.

After the *remittitur* went down to the lower court, the defendants filed a supplemental answer, in which they stated the preceding occurrences in the case,—the former judgment, the appeal, the reversal of the judgment, the sale under the decree to the plaintiff, etc. They also averred that after the commencement of the action they "sold and conveyed" the mortgaged premises to said Goodwin; that the latter had redeemed from the sale, by paying to the commissioner, for plaintiff, the amount of the purchase money; and that the commissioner "applied that sum in satisfaction of the judgment." They pray "judgment of the court that plaintiff take nothing by this action, and that said note and mortgage described in plaintiff's complaint herein be decreed by the judgment of this court to be paid, fully satisfied, and canceled." And, in accordance with their prayer, it was decreed in the judgment which was entered, "That the note and mortgage referred to in plaintiff's complaint herein and the in-

debtedness evidenced thereby are fully paid, satisfied, and discharged." Defendants do not appeal.

After the *remittitur* had gone down, Goodwin, by leave of court, filed an intervention. Before that he had not appeared in the case, and the court finds that he never took any steps to be substituted in place of the Ormerds as defendant, and never asked to conduct any proceeding in the name of said defendants; and that he "took no proceeding in said cause other than to redeem as hereinbefore found" until he asked leave to intervene after the going down of the *remittitur*. In his intervention he states all the preceding history of the case. He avers that on April 13, 1899, after the commencement of the action and before the first judgment, the said defendants, "by a good and sufficient grant deed, sold and conveyed to the said George Goodwin, subject to the mortgage referred to in plaintiff's complaint and sought to be foreclosed therein, the mortgaged premises described in said complaint," and that at all times since, including the time of his said redemption, he has been the owner of the mortgaged premises "subject to said mortgage." He alleges that the amount of redemption money which he paid included interest which ought not to have been in the judgment because the said instrument executed at the time of the execution of the mortgage provided, in violation of the provisions of the constitution above referred to, that the mortgagors should pay the taxes on the mortgage debt. He avers that the redemption money was accounted for by plaintiff, as executrix, to the estate of Henry Matthews, deceased, and had been distributed to the heirs, legatees, and devisees of said estate, and that there is now no property of said estate remaining. The prayer of the intervention is, substantially, that the court determine how much the redemption money paid by intervener exceeded the amount which it would have been if the judgment had not included the said interest, and that intervener have a personal money judgment against the plaintiff for such excess. The court adopted the intervener's theory of his right to such judgment, found such excess to be $2,037.08, and for the latter amount, with interest, etc., rendered judgment for intervener against plaintiff. It is not clear from the intervention whether judgment is asked

against plaintiff in her individual capacity or as executrix; but the judgment is against her as executrix, and made payable out of the estate of Henry Matthews. From that part of the judgment which is in favor of the intervener and against plaintiff, for the said sum of $2,037.08, etc., and from the order denying a motion for a new trial, plaintiff appeals.

We do not see any sound principle upon which the part of the judgment appealed from can be sustained. With respect to the constitutional provision in question, and the rights of parties under it, the principles are clearly applicable which have been judicially applied to the asserted rights of parties under general usury laws. It is in its essential elements a usury law. In *Matthews* v. *Ormerd,* 134 Cal. 87, it is called by the court "This provision against usury," and in *Harralson* v. *Barrett,* 99 Cal. 611, and *London Bank* v. *Bandman,* 120 Cal. 224,[1] the doctrine generally applied to usury laws,—namely, that they are for the benefit of the borrower, and that he may waive the privilege, and that if he does so and pays the interest he cannot recover it back, is applied to the constitutional provision in question.

The law seems to be well settled that a purchaser of mortgaged premises from the mortgagor, who takes a conveyance expressly "subject to the mortgage," cannot set up a taint of usury in the mortgage. The authorities to the point are numerous. The following are enough to be here cited: Jones on Mortgages, sec. 1494; *De Wolf* v. *Johnson,* 10 Wheat, 367; *Cramer* v. *Lepper,* 26 Ohio St. 59;[2] *Sands* v. *Church,* 6 N. Y. 347; *Reading* v. *Weston,* 7 Conn. 409; *Mechanics' Bank* v. *Edwards,* 1 Barb. 271. In *De Wolf* v. *Johnson,* 10 Wheat. 367, the United States supreme court says: "It is perfectly established that the plea of usury, at least as far as to landed security, is personal and peculiar; and, however a third person, having an interest in the land, may be affected incidentally by a usurious contract, he cannot take advantage of the usury;" and further: "It would, indeed, be astonishing, were it otherwise, for the contrary rule would hold out no relief to the borrower; it would be only transferring his money from the pocket of the lender to the pocket of the holder of the equity of redemption." In *Sands* v. *Church,*

[1] 65 Am. St. Rep. 179.        [2] 20 Am. Rep. 756.

6 N. Y. 347, the court say: ''One of the questions involved in this case is how far the defense of usury is personal to the debtor, or may be available to other parties,'' and in response to the inquiry the court decides that—we quote for brevity from the *syllabus*—''Persons who accept a lien upon, or interest in; the equity of redemption of mortgaged premises, as mortgagees or purchasers, *expressly subject to the lien of the prior mortgage,* cannot avail themselves of usury in such mortgage, in defense to a suit for its foreclosure.'' In *Reading* v. *Weston,* 7 Conn. 409, the court say: ''It has been a long and uniformly established law, that one not a party to an usurious contract, may not, for this cause, invalidate it. (Citing numerous cases.) The reason is extremely obvious. The law of usury was made to prevent oppression, and to rescue the party oppressed; but it never was intended for the benefit of those who are not and cannot be injured by an usurious transaction. It falls within that class of statutes in which, although a contract is declared to be utterly void, it is voidable only at the election of the oppressed party.'' The foregoing quotations are sufficient to show the character of the decisions on the point. It has been held in a few cases that where the grantee did not know of the existence of the mortgage charged with usury, and did not take expressly subject to the same, and it affirmatively appeared that he had paid the full value of the property without any reduction on account of the mortgage, then he might set up usury; but such cases, even if correctly decided, do not disturb the rule above stated as applied to cases like the one at bar, where the grantee took with full knowledge of the mortgage and expressly subject to it, and where the face value of the mortgage is presumed to have been considered in fixing the purchase price to be paid the grantor. Respondent relies somewhat on the case of *Garms* v. *Jensen,* 103 Cal. 374. But the point here involved was not made or discussed in that case. The only questions there were whether a certain clause in a mortgage was in violation of the said section 3 of article XIII of the constitution; and if so, whether it was rendered innocuous by the fact that the mortgagee had not attempted to collect any tax from the mortgagor on the mortgage debt. Moreover, in that case the contest was entirely between a senior and a

junior mortgagee, each striving to secure the money which he had loaned; and some of the authorities recognize a distinction between such a case and that of a grantee who has purchased subject to a mortgage which he is supposed to have considered in fixing the purchase price.  The matter is fully discussed in *Truesdale* v. *Dowdle,* 47 N. J. Eq. 396.  That was a suit to foreclose a mortgage, and it was averred that the defendant Dowdle was a subsequent purchaser who took the mortgaged premises under a deed which was expressly made subject to plaintiff's mortgage.  The defendant averred that, although his deed was in form an absolute conveyance, it was in fact intended as a mortgage.  The appellate court reversed the case, because under the averments the mortgagor should have been made a party; and held that if plaintiff was a mortgagee he could set up the usurious character of the first mortgage, but that if he was a purchaser he could not,—saying, "The doctrine is undoubtedly well settled that the purchaser of the equity of redemption covered by a usurious mortgage, who takes the title subject to the mortgage, cannot set up the defense of usury," citing cases.  And one of the grounds of the rule is there stated to be "that the purchaser by taking title subject to the mortgage and retaining out of the price he agreed to pay sufficient money to pay the mortgage, places himself in a position where he cannot allege usury without attempting to keep back part of the money which he agreed to pay for the mortgaged land," and it is further said that if it were held otherwise, "the grantee would be permitted to speculate on a violation of the law which has done him no harm, and to keep back money to which he has had no right whatever."  Respondent's contention that, although he took subject to the mortgage, he can take advantage of what afterwards appeared to be a usurious taint in that instrument, is the same contention made unsuccessfully by grantees in the adjudicated cases above noticed.  Our conclusion is, that respondent, as purchaser and grantee subject to the mortgage, cannot set up the invalidity of the mortgage as to interest; and, of course, cannot recover back the interest which he claims to have paid when he made the redemption.

Counsel for appellant make other points, as, for instance, that the supplemental answer of the mortgagors is a waiver

by them of the claim of illegal interest, that the redemption by respondent was a voluntary payment, that the payment was made to a trustee with the knowledge of intervener that it would be distributed by her to the beneficiaries, which, as he alleges, was done, etc.; but under the views above expressed it is not necessary to definitely pass on these other points.

That part of the judgment appealed from,—namely, "that the intervener, George Goodwin, do have and recover of and from the plaintiff, Mary Matthews, as executrix of the estate of Henry Matthews, deceased, the sum of $2,037.08, and the further sum of $5.00, his costs of suit, together with interest upon said sums at the rate of 7 per cent per annum from the date hereof, and it is further ordered that said amount and the same is hereby made payable out of the estate of Henry Matthews, deceased," is reversed, and the order denying the motion for new trial is also reversed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.