EDWIN S. DOUGLAS, Respondent, v. P. S. KLOPPER, Appellant.

(1 Cal. Supp. 22.)

Henry E. Carter for Appellant.

Albert E. Coger for Respondent.

SHAW, J.—This is an appeal by the defendant from a judgment on the pleadings entered against him upon the plaintiff's motion.

It appears from the complaint that the defendant loaned to the plaintiff the sum of $5,000, for which plaintiff agreed to pay usurious interest; that in pursuance of this agreement the plaintiff paid defendant the sum of $684.42 as interest; and that plaintiff seeks to recover the amount so paid, beginning his action more than one year, and less than two years, after the interest was paid.

Defendant in his answer admitted that the loan was usurious; alleged that plaintiff's action was barred by section 3 of the Usury Act, by subdivision 1 of section 339, and by subdivision 1 of section 340 of the Code of Civil Procedure; and further alleged that the payment of interest was voluntary, and hence could not be recovered.

We do not think plaintiff's claim is barred by any of the statutes of limitation set up in the answer. Section 3 of the Usury Act provides that anyone who has paid usurious interest may recover treble the amount so paid, provided his action is brought within one year after payment. Plaintiff did not sue for treble the amount of the interest paid and has therefore not brought his suit under this statute. Hence, the fact that he did not bring his action within one year does not bar him. For the same reason subdivision 1 of section 340 of the Code of Civil Procedure, which bars in one year actions on a statute for a penalty or forfeiture, does not apply to the case. Doubtless plaintiff's action is within the purview of subdivision 1 of section 339 of the Code of Civil Procedure, and would be barred within two years, but his cause of action did not arise until the interest was paid, which was less than two years before the action was brought.

This brings us to the principal questions argued, which are: Whether one who has paid usurious interest may maintain a common-law action independent of the remedy under the statute to recover the amount so paid, and whether the fact that he has paid such interest voluntarily will prevent a recovery in such an action. On these questions the authorities in other states are conflicting. Our present usury law, as stated by the Supreme Court in *Wallace* v. *Zinman,* 200 Cal. 585, 590 [62 A. L. R. 1341, 254 Pac. 946],

and *In re Washer*, 200 Cal. 598, 602 [254 Pac. 951], was borrowed to a large extent from the Wisconsin law, and while the copying may not be sufficiently exact to show a legislative intent to import also the construction judicially put upon the Wisconsin law, yet decisions from that state are quite persuasive as to the rule which should be adopted here, and it is there held that a plaintiff may recover under the circumstances shown by the pleadings in this case.

In *Wood* v. *Lake*, 13 Wis. 84, 97, a similar question arose. There the defendant had paid interest in excess of the highest rate allowed by law, and pleaded this payment as a counterclaim in an action brought upon his note. The action having been brought after the expiration of time for pursuing the statutory remedy, the court held this counterclaim good, saying:

"A remarkable unanimity of opinion upon this question seems to have prevailed among the courts of Great Britain and those of the several states of the Union where laws against usury, properly so called, have existed. It has been universally held, where statutes forbid the taking of excessive interest, and punish a violation of their provisions by the infliction of fines, penalties or forfeitures upon the person who takes it, that the person who pays the same may, independently of the remedies afforded by the statutes, maintain an action for money had and received, at the common law, to recover back the money so paid. In such cases, both parties are not understood to be *in pari delicto,* so as to preclude a recovery by either. Upon this subject, Mr. Comyn, in his Law of Usury, page 211, says: 'And with regard to parties becoming *participes criminis,* the following distinction is laid down, viz.: between the prohibition of statutes made to protect the weak or necessitous from being overreached or oppressed, and the prohibitions of statutes enacted upon general reasons of policy and public expediency; in the latter case, all parties are equally criminal; in the former, the oppressor is alone within the pale of the law.' The penalties of the law are all aimed at the lender and none at the borrower; and it appears to be clearly within the intent and meaning of the legislature, if not their words, that he shall not be permitted to retain or profit by money or property thus unlawfully acquired. The provision of the law of this state (sec. 3, chap. 172,

Laws of 1851), by which every person paying a greater sum for the loan or forbearance of money than that allowed by law, might if his action was brought within one year after such payment, recover back treble the sum so paid, confirms this view. It shows that the legislature did not intend the receiver should retain the money thus obtained, and that they did not consider both parties equally at fault. Otherwise they would not have permitted the borrower to recover back three times the amount and thus speculate out of the attempted extortions of the lender. But if the borrower chooses, by not bringing his action within one year, to waive his right to a treble recovery, he may do so and still retain the right to maintain an action for money had and received, to recover back the excess actually paid, at any time within the period prescribed by the statutes of limitations. For the remedy given by the statute is cumulative and not exclusive, as has frequently been decided in other states where similar statutory remedies have been given.''

In *Fay* v. *Lovejoy*, 20 Wis. 403, this ruling was repeated and both of these cases were approved in *Schriber* v. *Le Clair*, 66 Wis. 591 [29 N. W. 570, 889].

In 3 Parsons on Contracts, 128, the rule is thus stated, citing *Browning* v. *Morris*, (1778) 2 Cowp. 790, 98 Eng. Reprint, 1364:

''The distinction has been taken between statutes enacted on general grounds of policy and public expediency in which each party violating the law is *in pari delicto* and entitled to no assistance from a court of justice, and those laws enacted to protect weak or necessitous men from being overreached, defrauded or oppressed, in which event the injured party may have relief extended to him, and the whole purport and reason, both of the law of usury and of the great mass of decisions under it, indicate that the lender on usury is regarded as the oppressor and the criminal, and the borrower as the oppressed and injured.''

In *Wheaton* v. *Hibbard*, 20 Johns. (N. Y.) 290 [11ʹ Am. Dec. 284], the same rule was adopted as in the Wisconsin cases, *supra*, and the court said:

''The law considers the borrower rather as a victim than an aggressor. The statute prohibits usury, in order to protect needy and necessitous persons from the oppression of

usurers, who are eager to take advantage of the distresses of others, and who violate the law only to complete their ruin. In such a case the maxim of *potior est conditio defendentis* has never been applied.''

In *Lee* v. *Hillman,* 74 Wash. 408 [Ann. Cas. 1915A, 759, L. R. A. 1918B, 581, 133 Pac. 583], the court followed the same rule and quoted with approval from *Baum* v. *Thoms,* 150 Ind. 378 [65 Am. St. Rep. 368, 50 N. E. 358] the following:

''The payment of usurious interest is not a voluntary payment in such sense as to entitle the receiver to retain the amount paid above legal interest, but such payment is regarded as under the constraint of a formal, though illegal, contract, obtained by taking advantage of the necessities of the borrower, and therefore excepted from the ordinary rule that one voluntarily paying money on an illegal claim cannot maintain an action to recover such payment. (*Wheaton* v. *Hibbard, supra; Schroeppel* v. *Corning,* 5 Denio (N. Y.), 236; *Peterborough Sav. Bank* v. *Hodgdon,* 62 N. H. 300; *Willie* v. *Green,* 2 N. H. 333; *Caughman* v. *Drafts,* 1 Rich. Eq. (S. C.) 414; *Fay* v. *Lovejoy,* 20 Wis. 403; *Wood* v. *Lake,* 13 Wis. 84; *First Nat. Bank* v. *Plankinton,* 27 Wis. 177 [9 Am. Rep. 453]; *Grow* v. *Albee,* 19 Vt. 540; *Williams* v. *Wilder,* 37 Vt. 613; *Scott* v. *Leary,* 34 Md. 389; *Philanthropic Bldg. Assn.* v. *McKnight,* 35 Pa. 470; *Thomas* v. *Shoemaker,* 6 Watts & S. (Pa.) 179–183; notes to *Ziegler* v. *Scott,* 54 Am. Dec. 400–402; *Bexar Bldg. & L. Assn.* v. *Robinson,* 22 Am. St. Rep. 41, and *Davis* v. *Garr,* 55 Am. Dec. 398–400; 2 Ency. Pl. & Pr., pp. 1019, 1020, and note on usury.) It follows, therefore, that in the absence of a statute expressly prohibiting it, usurious interest, which has been paid by a debtor, may be recovered in a direct action, or in any action brought by the person receiving such usurious interest, on a contract, express or implied, against such debtor.''

In *Lee* v. *Hillman* a satisfactory answer is made to the argument, which is also presented in the case at bar, that at common law there is no limitation on the rate of interest that may be charged on a loan, and that there can be no common-law right to recover a payment which is made illegal by statute. On this point the court said:

"It may be conceded that there is a sense in which there is no such *right* in the absence of statute, since whatever right the debtor has must necessarily rest primarily upon the statute which makes the exaction of such payment from him unlawful. We think, however, that it does not follow that the debtor who has been thus unlawfully deprived of money or property may not recover such money or property by a common-law *remedy*, and that, of course, under our system, means by the ordinary civil action which we have substituted for the common-law remedy. While the *right* here involved rests primarily upon our usury statute, and would not exist in the absence of such statute, we think an ordinary civil action, that being our substitute for the common-law remedy, furnishes a remedy available to the debtor to recover the money or property unlawfully taken from him in payment of usurious interest. We are unable to see that a debtor having money or property thus unlawfully taken from him is in any different situation, so far as his right to have the same restored is concerned, than as if it were taken from him in some other unlawful manner. Nor can we see that his right to restoration is any different because the taking is made unlawful by statute instead of by the common law."

In 39 Cyc. 1030 is the following statement on this subject:

"The common-law doctrine which has been adopted by many of the American courts is that the debtor may recover payments made upon a loan in excess of the legal rate of interest. According to this doctrine such payments are not deemed voluntary, nor the debtor to be *in pari delicto* in making them. Hence, an action lies to recover such usurious excess from the creditor who ought not in equity and good conscience to retain more than his principal and lawful interest thereon. It is held in these states that other remedies given by statute do not suspend the common-law right, but are cumulative merely."

In a note many cases supporting this statement are cited, some of which we have examined. In a subsequent note other, but not so many, cases holding to the contrary, are cited.

In 27 Ruling Case Law, 269, the rule is laid down as follows:

"By the weight of authority, both in this country and in England, an action at common law, in the nature of an action for money had and received, will lie for the recovery back of usurious payments in excess of principal and legal interest. And the omission from a later statute of an express provision of an earlier one for the recovery back of excessive payments does not negative the common law right. A payment of usurious interest is regarded as made under the constraint of a formal, though illegal, contract, obtained by taking advantage of the necessities of the borrower, and is, therefore, excepted from the ordinary rule that one voluntarily paying money on an illegal scheme cannot maintain an action to recover such payment. It is to be observed, however, that while the courts which sustain this rule regard the usurer as an oppressor and the debtor as a victim, so that in a sense the payment of usury is regarded as involuntary, no proof of duress or oppression is necessary to sustain the rule, other than that involved in the act itself of taking the money under a usurious contract."

In an extensive note on this subject, appended to the above-cited case of *Lee* v. *Hillman*, in L. R. A. 1918B, 585, this statement is made and supported by the citation of numerous authorities:

"By the weight of authority, both in this country and in England, an action at common law, in the nature of an action for money had and received, will lie for the recovery back of usurious payments; at least, where the statute in relation to usury declares usurious contracts void in whole or in part."

This same note cites other less numerous cases to the contrary, but many of them can be distinguished from the case at bar by the fact that the statutes against usury under which they were decided did not declare a usurious agreement void or impose any criminal liability on the lender. Some of these statutes, in fact, clearly placed both parties *in pari delicto* by forfeiting the usurious interest to some public fund.

In the same note, at page 593, we find this statement, which is supported by the authorities cited:

"In jurisdictions recognizing the common-law rule which permits recovery back of usurious payments, it is held that such remedy is not abrogated by an express statutory

remedy for the recovery back of excessive interest or a penalty within a limited time, the statutory remedy being regarded as cumulative of the remedy at common law."

The questions under consideration here have not been decided in any case arising under our present usury law. There are, however, some California decisions which, in appellant's view of the case, are controlling here. Those decisions were made upon the provision formerly contained in the California Constitution which required a mortgage to be assessed for the purpose of taxation to the mortgagee, and provided that every contract by which the debtor is required to pay the tax on the mortgage "shall, as to any interest specified therein, . . . be null and void." (Art. V, sec. 13.) The case of *Haralson* v. *Barrett*, 99 Cal. 607, 611 [34 Pac. 342], arose under this provision. In an action to foreclose a mortgage containing such a forbidden clause, the mortgagor claimed that the interest he had paid should be deducted from the amount of principal due, and the court said:

"There is a clause in the mortgage for the payment by the mortgagors of the mortgage tax. This clause being invalid under Article V of section 11 of the Constitution, *supra*, releases the mortgagors from any obligation to pay the interest stipulated in the note. The provision was inserted in the Constitution for the benefit of the borrower, but it is a benefit which he may waive if he sees fit, and if he voluntarily fulfills his promise to pay interest, it is through a mistake of law on his part or a waiver of a known right. In either case he is bound by his own act."

This case was followed without further comment in *London etc. Bank* v. *Bandmann*, 120 Cal. 220, 224 [65 Am. St. Rep. 179, 52 Pac. 583]. In *Matthews* v. *Ormerd*, 140 Cal. 578, 581 [74 Pac. 136], the court said, regarding the same constitutional provision:

"With respect to the constitutional provision in question, and the rights of parties under it, the principles are clearly applicable which have been judicially applied to the asserted rights of parties under general usury laws. It is in its essential elements a usury law. In *Matthews* v. *Ormerd*, 134 Cal. 87 [66 Pac. 67, 210], it is called by the court 'this provision against usury,' and in *Haralson* v. *Barrett, supra,* and *London Bank* v. *Bandmann, supra,* the doctrine gener-

ally applied to usury laws,—namely, that they are for the benefit of the borrower, and that he may waive the privilege, and that if he does so and pays the interest he cannot recover it back,—is applied to the constitutional provision in question."

These three cases were cited and followed on the point that voluntary payments cannot be recovered in *Leahy* v. *Warden,* 163 Cal. 178 [124 Pac. 825], another case cited by appellant, which, however, did not relate to this constitutional provision or to any matter of usury or any payment prohibited by law. A general study of the decisions in other states regarding usury indicates that the court was mistaken in its statement above quoted from *Matthews* v. *Ormerd* as to the doctrine generally applied to usury laws. The doctrine there stated has been applied in some cases but the great weight of authority is to the contrary. However, this fact alone would not justify us in refusing to follow that case unless it is distinguishable on other grounds.

The constitutional provision involved in the cases just referred to declared that every contract containing the provision for payment of the tax by the mortgagor should be null and void as to any interest specified therein. To this extent it was substantially like our present usury law, which provides that a contract for usurious interest "shall be null and void as to any agreement or stipulation therein contained to pay interest." (Sec. 2.) But the present usury law goes further and provides as a penalty that three times the interest paid may be recovered from the lender, and also makes the receipt—but not the payment—of usurious interest punishable criminally as a misdemeanor. We think these differences point the way to the application of a different rule in cases arising under the statute. The provisions contained in the statute, but not found in the constitutional provision, are the same as those relied upon in the Wisconsin cases in support of the ruling that usurious interest paid may be recovered, and many of the other cases adopting the same rule lay stress on one or the other of these provisions as indicating that the borrower is not *in pari delicto* with the lender.

In *Tatterson* v. *Kehrlein,* 88 Cal. App. 34, 49 [263 Pac. 285, 291], it was held that money paid for stock under a contract which is illegal by reason of noncompliance with

the Corporate Securities Act may be recovered. The court referred to the English case of *Browning* v. *Morris,* which we have already cited, saying:

"The penalties prescribed by the Corporate Securities Act, being all laid on the seller and none on the buyer, and the statute being for the benefit and protection of buyers, the parties are not *in pari delicto,* and the buyer may have judgment for the money paid out by him under the illegal contract, and may have the contract, the stock certificates and promissory note given in payment of such stock, cancelled. (Citing authorities.) The foundation of the right of the plaintiff to recover in these cases, although a party to the illegal contract, is the rule of the common law declared by Lord Mansfield in *Browning* v. *Morris,* 2 Cowp. 790, 981 Eng. Reprint, 1364."

The Corporate Securities Act is in all respects pointed out in *Browning* v. *Morris* in the same class as the Usury Act, and we think the rule thus declared in *Tatterson* v. *Kehrlein* should be applied to both.

For the foregoing reasons, the answer in this case stated no defense and the plaintiff was entitled to a judgment upon the pleadings. But the judgment entered by the court was for the whole amount paid by the plaintiff as interest. The authorities do not sanction the recovery of so much. In Wisconsin, on whose decisions the plaintiff especially relies, it was held in *Fay* v. *Lovejoy,* 20 Wis. 403, that only the excess of the interest paid over the legal rate can be recovered in a common-law action, the court saying:

"All the authorities agree that when interest money has been paid and applied as such with the consent of the borrower, only the illegal excess can be recovered back. The reason is, that equity never favors a forfeiture, and will not, unless bound down by statute, lend its aid to enforce one, but will, as a condition of relief, hold the party to the performance of that which is just and equitable. The payment of the principal sum loaned and lawful interest is always regarded as just and equitable. It is no more than the borrower ought in conscience to pay, nor than, in the absence of the prohibition of the statute, he would be required to pay. If, therefore, he has paid the interest, a court of equity will not aid him to get it back, within the lawful rate, though the lender had no action to compel its

payment. And the rule is the same in an action at law for money had and received, to recover it back; or if the borrower set off the interest money paid against the principal sum in a legal action of the lender to recover that. Money had and received, though legal in form, is in its nature an equitable remedy, and lies only where the defendant has received money which, *ex aequo et bono*, he ought to refund. The fact, therefore, that the statute forfeits all interest or provides that no interest shall be recovered, does not give the borrower a right to recover it back, where it has once been paid. Many of the cases in which it is held there can be no such recovery, arose under statutes which forfeit both principal and interest. It was competent for the defendant in this case to waive the forfeiture and pay the interest, and so far as he has done so, the payments, within the rate allowed by law, will not be disturbed. It is only the excess or unlawful interest which can be deducted.''

The same doctrine is stated and supported by citations of cases in 27 R. C. L. 270, 39 Cyc. 1031, and the above-cited note in L. R. A. 1918B, the language of this note at page 588 being: ''At common law, the rule was limited to the recovery back of the usurious excess, and did not extend to lawful interest, even though, under the statute, the lender could not have recovered such interest. This is assumed in all, or practically all, of the cases which sustain the rule.''

The judgment is, therefore, excessive. In applying this rule, a question may arise which is not directly answered by any of the cases examined by us, as to whether the legal interest which cannot be recovered is seven per cent, the amount of interest drawn by a loan made without any agreement as to interest (Civ. Code, sec. 1914; sec. 1, Usury Act), or twelve per cent, which is the highest rate of interest that may legally be agreed upon for a loan (sec. 1, Usury Act). Under our statute, the rate can exceed seven per cent only where there is an express written agreement to that effect. Here the only written agreement made upon the subject ·is void under the statute and, consequently, there is in the eyes of the law no agreement as to interest. Defendant's right to retain any part of the interest is based on equitable principles and we do not see how, under such circumstances, he can have any equity to retain more than the amount of interest which he could recover if there had

been no agreement, that is, seven per cent simple interest on the actual loan. The principal of the loan in this case was paid by installments at various dates and, hence, some computation will be necessary to determine the exact amount of the judgment, which we think can properly be done in the lower court.

The respondent also contends that the court erred in not allowing him interest upon the amount of his recovery from the date when he made the payment of interest. It is true he has not appealed from the judgment, and if we found no other error in it, we could not have taken notice of his contention. But in view of the necessity of reversing the judgment and remanding the case to the municipal court for further proceedings, we think we should consider this point. While an appellate court will not ordinarily consider errors against respondent, it is equally true that a proper judgment will be upheld although it may have been given for an erroneous reason. The judgment appealed from is simply one in favor of plaintiff for $684.42, and in support of it he may properly advance on appeal any argument which will support a judgment for that amount or less, though it may have been rejected by the trial court. Of course, no effect could be given to such an argument by way of increasing the amount of the recovery, but here it is obvious that, by reason of our ruling that legal interest on the principal must be deducted from the judgment, the addition of interest on the amount recovered will still leave the amount of the judgment less than that from which the appeal was taken. The plaintiff's action is substantially one for money had and received. The amount which he is entitled to recover was paid by him on a definite date, and the defendant's obligation to repay it arose immediately upon the payment. The amount recoverable can be exactly fixed by computation and, hence, we think the plaintiff is entitled to interest upon his recovery from the date when he made the usurious payment. (Civ. Code, sec. 3287; *Richter* v. *Union etc. Co.*, 129 Cal. 367 [62 Pac. 39].)

The judgment is reversed and the cause is remanded to the municipal court, with directions to enter a judgment in favor of plaintiff upon the pleadings for the excess of the amount of interest paid by plaintiff over simple interest at seven per cent upon the various installments of principal

paid by the plaintiff, from the time they were loaned to him until the time he repaid them to defendant, respectively, with interest upon the amount so recovered at seven per cent from May 25, 1926, to date of judgment, appellant to recover his costs of appeal.

McLucas, P. J., and Bishop, J., concurred.

[Cr. A. No. 226. Appellate Department, Superior Court, Los Angeles County.—January 16, 1930.]