[L. A. No. 20921.   In Bank.   Aug. 18, 1950.]

EDNA HARRIET STOCK, Appellant, v. GLENN L. MEEK et al., Respondents.

Desmond & Desmond and Walter Desmond, Jr., for Appellant.

Newton M. Todd, Fred A. Watkins and James J. Baker for Respondents.

TRAYNOR, J.—Plaintiff brought this action to rescind the purchase from defendants, husband and wife, of space in a cooperatively-owned apartment house and to recover the amount she had paid defendants therefor. Defendants counterclaimed for interest that they had paid plaintiff on a usurious loan.

Early in 1945 defendants purchased the Palace Apartment Hotel in Long Beach. They intended to sell the 46 apartments to purchasers on an "own-your-own" plan. An escrow and trust were set up to convey title to purchasers, to pay expenses, and to distribute any profits.

Defendants consulted counsel about obtaining a permit from the Commissioner of Corporations to sell units to the public. Counsel advised that it was desirable to pay off a $20,000 second mortgage on the property before applying for the permit. Defendants raised $10,000 by selling 30 per cent of the venture to friends. One of these investors suggested that plaintiff might furnish the remaining funds, and introduced defendant Glenn L. Meek to her. Defendant offered to give plaintiff a promissory note for $20,000, payable 365 days from date, in return for a loan of $10,000. Plaintiff wished to consult an attorney and accompanied defendant to his attorney. Plaintiff testified that she intended to buy an interest in the venture, not to lend money to defendant, and that attorney had advised her that such a purchase would not be illegal but had disapproved of the investment as a gamble. Defendant and the intermediary who introduced the parties testified that the arrangement was always considered a loan and that the lawyer had specifically warned plaintiff that the transaction was therefore usurious. Plaintiff furnished the funds to defendants and was eventually paid $20,000 from the proceeds of the sales of apartments.

In a separate transaction, plaintiff purchased a nonresidential part of the same apartment house, called "Space 101" by the parties. She paid defendant Glenn L. Meek $9,000 for the "exclusive and permanent right of occupancy," as described in the Certificate of Beneficial Ownership issued by the trustee, Security-First National Bank of Los Angeles. The record does not disclose what use plaintiff intended to make of the space. Plaintiff alleged, however, that defendant had represented to her that the space could be "used and owned exclusively" after the lobby of the building had been completed, and that she had purchased the space in reliance

on this representation. Plaintiff alleged that when the work on the lobby was completed, she discovered that no one could obtain the exclusive and permanent occupancy of the space because of the building and fire regulations of the city of Long Beach. Plaintiff thereafter gave prompt notice of rescission; she seeks in this action to recover the $9,000 paid. Her complaint also included a common count for $9,000 had and received by defendants for her use and benefit.

Defendants denied the allegations of the complaint and counterclaimed for the interest or bonus paid on the note.

At the trial without a jury, the court excluded testimony by plaintiff concerning oral misrepresentations by defendant. Her counsel made the following offer of proof: "[that] a conversation took place in August, 1945 in which conversation the defendants Meek stated and represented to the plaintiff in this action, Mrs. Stock, that that part of Space 101 described as B in Exhibit 1 could be closed off and locked and that that part, the doorway at A, in Plaintiff's Exhibit 1, could be closed off and locked, and all space in 101 could be private and no one could enter. In October, 1945, we also are able to introduce a conversation between plaintiff and defendant Meek, a similar statement, and assurance, and on November 7, 1945 a similar conversation took place and likewise in November, 1945 a similar conversation took place and thereafter various conversations took place between the plaintiff and the Meeks to the effect that the space I have referred to could be cut off, the door placed thereon, and Space 101 will be entirely a private property and no one else will be permitted to enter . . . that the plaintiff had confidence and trusted in the defendant, in making those statements and otherwise she would not have purchased the property and after she purchased or determined, and was advised by the Fire Department, and it was pointed out to her that she could not do so, because of the fire restrictions. . . ."

The trial court gave judgment for defendants in the rescission action on the basis of the evidence before it. The trial court also held that the earlier transaction between the parties was a usurious loan. Judgment for the bonus amount, $10,000, and interest was awarded defendants on their counterclaim. Plaintiff appealed from the judgment and from an order denying the motion for new trial. The latter order is not appealable and the appeal therefrom is dismissed. (*Gray* v. *Cotton*, 174 Cal. 256 [162 P. 1019]; Code Civ. Proc., § 963.)

Defendants have moved to dismiss the appeal from the

judgment in the light of the following events occurring after entry of judgment. Plaintiff gave notice of appeal on June 23, 1948. Plaintiff did not, however, file a bond for stay of execution. Defendants levied execution on property of plaintiff, including her interest in the Palace Apartment Hotel trust representing Space 101 and Apartment 702. Before entry of judgment, plaintiff had filed and recorded a declaration of homestead as a single person upon Apartment 702. On or about August 6, 1948, defendants applied to the superior court pursuant to Civil Code, section 1245, for the appointment of appraisers to appraise plaintiff's homestead and requested that the court order the sale of Apartment 702. On September 28, 1948, the superior court ordered the sale after due notice to the judgment debtor, hearing, and appraisal. On or about October 28, 1948, both Space 101 and Apartment 702 were sold by the sheriff at public auction to the highest bidders. Space 101 was purchased by defendant Glenn Meek for $3,000, credited as a partial satisfaction of the judgment. Apartment 702 was purchased by one Watkins for $4,000, of which the sheriff paid plaintiff $3,000, her homestead exemption. On or about April 21, 1949, plaintiff transferred her power of redemption and property in Apartment 702 to Abel L. McConnell and Ila M. McConnell. On April 22, 1949, the McConnells redeemed Apartment 702 from the execution purchaser.

After the sale of Space 101 to defendant Glenn Meek on execution, the maintenance charges required of plaintiff by the trust became delinquent. The trustee sold Space 101 at public auction on June 3, 1949, under a power of sale provided by the declaration of trust. Space 101 was again purchased by defendants, who paid a cash consideration not exceeding $1,000. On June 22, 1949, defendants made a bona fide sale of Space 101 for $4,050 to a third person or persons who are now the owners of the space.

Defendants move to dismiss the appeal on the ground that the questions involved have become moot. Their claim is not, however, that the outcome of the appeal is a matter of indifference to the parties or that consideration and disposition of the case on the merits cannot affect the substantial rights of the parties. They contend that plaintiff has destroyed her cause of action for rescission by her loss of Space 101, which she had offered to restore to defendants at the time she gave notice of rescission. The cases relied on by defendants

(e.g., *Lupton* v. *Domestic Utilities Mfg. Co.*, 173 Cal. 415 [160 P. 241]; *Taylor* v. *Hammel,* 39 Cal.App. 205 [178 P. 547]), are cases where plaintiff either made no offer to restore or else made the offer after an undue lapse of time from the notice of rescission, so that no cause of action for rescission ever arose.

Plaintiff complied with Civil Code, section 1691, by her offer of restoration, the bona fides of which is not questioned. Thereafter, defendants twice acquired Space 101 at public sales, and finally disposed of it to a third party. In the light of these facts, the plaintiff's cause of action did not become ''moot'' when defendants reacquired the property. (*Hillman* v. *Gordon,* 126 Wash. 614 [219 P. 46, 51]; *Vodicka* v. *Sette.* (Mo.) 223 S.W. 578.)

Defendants' second ground for their motion to dismiss the appeal is based upon plaintiff's acceptance of her homestead exemption at the time Apartment 702 was sold upon execution. Defendants contend that plaintiff thus accepted benefits from the judgment. Defendants rely on *Turner* v. *Markham,* 152 Cal. 246 [92 P. 485], but the case does not support their position. In that case, the appeal was from the order subjecting the homestead to execution, and not from the judgment that was being enforced by execution. In fact, that judgment was appealed, the appeal was heard and the judgment reversed. (155 Cal. 562 [102 P. 272].)

In order to benefit from the homestead, the proceeds of the sale under section 1245 of the Civil Code must be accepted by the judgment debtor within six months since they are protected from legal process for only that length of time. (Civ. Code § 1257.) Thus, the exemption usually must be accepted before the appeal can be completed. It may be proper to hold, as did the Turner case, that a judgment debtor, by accepting his homestead exemption, loses the right to challenge the order subjecting the homestead to sale. It is quite another matter to deprive him of his appeal from the original judgment.

In the Turner case, the potential liability of the judgment creditor to the purchaser at the execution sale* after reversal of the judgment on appeal and the possibility that the exemption proceeds could not be recovered from an insolvent judg-

---

*Code Civ. Proc., § 708, provides: "If the purchaser of real property sold in execution, or his successor in interest, be evicted therefrom in consequence of irregularities in the proceedings concerning the sale, or of the reversal or discharge of the judgment, he may recover the price paid, with interest, from the judgment creditor. . . ."

ment debtor, caused the court to dismiss the appeal. Under the facts of the present case, the judgment creditor cannot be liable to the present owners of the property sold on execution, the McConnells, who have redeemed the property as successors in interest to plaintiff, the judgment debtor, since they will retain Apartment 702 regardless of the outcome of the appeal. Redemption, even by a successor in interest of the debtor, terminates the effect of the sale. (Code Civ. Proc., § 703; *Calkins* v. *Steinbach*, 66 Cal. 117, 120-121 [4 P. 1103].) Thus, the Turner case is distinguishable not only because of the type of judgment appealed from, but also by virtue of the factual situations of the parties.

The motion to dismiss the appeal must be denied. It is therefore proper for this court to consider the merits of the case.

### *The Exclusion of Evidence in the Rescission Action*

It is contended that the trial court erred in excluding plaintiff's testimony concerning the conversations between the parties before plaintiff purchased Space 101. Defendant objected to the evidence, on the ground that it constituted a variance from the issues raised by the pleadings. Plaintiff pleaded the common counts for money had and received. Plaintiff also pleaded, as a second cause of action, (1) that defendants had represented to her that Space 101 could be used and owned exclusively by its purchaser; (2) that plaintiff relied on this representation in buying her share of the beneficial interest in the trust; (3) that plaintiff learned thereafter that the building and fire regulations precluded any owner of Space 101 from obtaining exclusive occupancy; (4) that plaintiff gave prompt and proper notice of rescission, offering to restore to defendants everything of value received from them. This complaint states a valid cause of action for rescission because of mutual mistake of law. (*Hannah* v. *Steinman*, 159 Cal. 142 [112 P. 1094]; *Adams* v. *Heinsch*, 89 Cal.App.2d 300 [200 P.2d 796]; Civ. Code, §§ 1576, 1578.) Plaintiff offered to prove the substance of these allegations, but the trial judge excluded the evidence. Even if the offered proof had constituted a variance, we cannot say that defendants were "misled . . . to [their] prejudice in maintaining [their] action or defense on the merits." (Code Civ. Proc., § 469; *cf. Wennerholm* v. *Stanford Univ. School of Medicine*, 20 Cal.2d 713, 716 [128 P.2d 522, 141 A.L.R. 1358].)

Defendants contend also that plaintiff's testimony is an

attempt to vary or modify the terms of a written agreement. The Certificate of Beneficial Ownership issued by the Security-First National Bank to plaintiff is said to embody the agreement of plaintiff and defendants in the words "such holder [plaintiff] . . . has the exclusive and permanent right of occupancy during the continuance of said Trust, of Space No. 101." (Code Civ. Proc., § 1856.) Extrinsic evidence to show mistake or fraud is admissible. Section 238 of the Restatement of Contracts states the general rule: "agreements prior to or contemporaneous with an integration are admissible in evidence: (b) to prove facts rendering the agreement void or voidable for illegality, fraud, duress, mistake or insufficiency of consideration." This court has approved the admission of extrinsic evidence to show a mistake of law by the grantor of a quitclaim deed, taken advantage of by the grantee. (*Jersey Farm Co.* v. *Atlanta Realty Co.*, 164 Cal. 412 [129 P. 593].) "It is, of course, true that where an instrument is sought to be avoided for fraud or for mistake in law or in fact, evidence is admissible as to what the grantor intended to do or to convey." (164 Cal. 412, 418 [129 P. 593]. *Cf. Mooney* v. *Cyriacks*, 185 Cal. 70 [195 P. 922] ; Code Civ. Proc., §§ 1856, 1860.) Since the testimony by plaintiff should not have been excluded either as a variance or under the parol evidence rule, the trial court erred in its ruling. This error precluded plaintiff from presenting her case for recovery and requires reversal of the judgment for defendants in plaintiff's action for rescission.

### *Defendants' Counterclaim For Interest Paid*

Plaintiff does not deny that the $10,000 "bonus" for the loan of $10,000 was usurious interest under the Usury Law. (Deering's Gen. Laws, Act 3757.) She contends, however, that defendants were *in pari delicto* and cannot invoke the aid of the courts to recover the usurious bonus. Plaintiff also contends that the protection of the usury laws can be waived by the voluntary payment of excessive interest by the borrower. Neither proposition is tenable.

The Usury Law provides that any person who pays interest at a usurious rate may recover treble the amount paid, "providing such action shall be brought within one year after such payment or delivery." It is settled that this section did not abrogate any common law rights of borrowers as parties to an illegal contract, but merely added a statutory remedy to aid the borrower and penalize the lender. (*West-*

*man* v. *Dye,* 214 Cal. 28 [4 P.2d 134]; *Taylor* v. *Budd,* 217 Cal. 262 [18 P.2d 333].) Borrowers may therefore bring an action for money had and received to recover usurious interest paid within two years of the suit. (*Babcock* v. *Olhasso,* 109 Cal.App. 534 [293 P. 141]; Code Civ. Proc., § 339(1).) Since the overpayment occurred on January 12, 1946, and the complaint was filed March 26, 1947, defendants are not barred from setting up a counterclaim to recover the interest. (*Jones* v. *Mortimer,* 28 Cal.2d 627, 633 [170 P.2d 893].)

█ Plaintiff relies principally on the dictum in *Matthews* v. *Ormerd,* 140 Cal. 578, 581 [74 P. 136], that the protection of usury laws can be waived by the voluntary payment of excessive interest by the borrower. The Matthews case and the cases it relied on (*Harralson* v. *Barrett,* 99 Cal. 607 [34 P. 342]; *London & San Francisco Bank* v. *Bandmann,* 120 Cal. 220 [52 P. 583, 65 Am.St.Rep. 179]) are not in point. They involved a constitutional provision of limited applicability, which did not penalize the lender with treble damages and criminal sanctions as does the Usury Law, but merely invalidated mortgage provisions requiring a mortgagor to pay taxes assessed against the interest of the mortgagee. Moreover, the party seeking to recover the interest paid in the Matthews case was not the original borrower of the funds, but a third party who had purchased the mortgagor's interest.

If the dictum of the Matthews case were accepted, the protection of borrowers provided by the Usury Law would be vitiated. The theory of that law is that society benefits by the prohibition of loans at excessive interest rates, even though both parties are willing to negotiate them. Accordingly, "voluntary" payments of interest do not waive the rights of the payors. "Payments of usury are not considered voluntary but are deemed to be made under restraint." (*Taylor* v. *Budd,* 217 Cal. 262, 266 [18 P.2d 333].) If no loophole is provided for lenders, and all borrowers save fraudulent ones are protected, usurious transactions will be discouraged.

█ The cases interpreting the Usury Law have discarded the Matthews dictum. Moreover, they have refused to apply the allied doctrine urged by plaintiff that the parties are *in pari delicto.* An early case under the Usury Law, *Douglas* v. *Klopper,* 107 Cal.App.Supp. 765 [288 P. 36], permitted the recovery of the amount paid in excess of the legal interest charge. In *Babcock* v. *Olhasso,* 109 Cal.App. 534 [293 P. 141]

(petition for hearing denied), the borrower sought both treble interest under the law and the recovery of additional interest paid more than one year before the action. Both elements of recovery were sustained. In *Westman* v. *Dye,* 214 Cal. 28 [4 P.2d 134], the defendant was permitted to set off all interest paid against the principal obligation. The provisions of the Usury Law permitting recovery of treble interest and making usury a crime on the part of the lender indicated to the court that the borrower is not to be treated as equally culpable with the lender. "The parties to a usurious transaction are not to be regarded as *in pari delicto.*" (214 Cal. 28, 35.) The limitation of the borrower's recovery to the amount charged in excess of the legal rate in *Douglas* v. *Klopper, supra* (107 Cal.App.Supp. 765), was expressly overruled in *Taylor* v. *Budd,* 217 Cal. 262, 267 [18 P.2d 333], and recovery was allowed of treble the interest paid within the last year and the full amount of interest paid during the year before that. The law in California is thus settled, although the authorities in other jurisdictions do not form a consistent pattern. (*E.g., Plitt* v. *Kaufman* (1947), 188 Md. 606 [53 A.2d 673] (borrower not *in pari delicto*); but see, *Wright* v. *First National Bank,* 297 Mich. 315 [297 N.W. 505] (recovery denied) ; 55 Am.Jur. §§ 111-112.)

Proper enforcement of the law of usury precludes the blanket application of the *in pari delicto* doctrine. One method of preventing usury is to permit the recovery of usurious interest paid. During the first year after payment, the right of borrowers to recover treble the interest paid is enforced. It would be glaringly inconsistent to deny their right to recover the actual interest paid after the passage of one year.

It has been suggested that if the borrower was a "corrupt, collusive confidant who fraudulently inserted a usurious rate of interest for the purpose of defeating an action for interest on the note," he might be estopped from urging the defense of usury. (*Paillet* v. *Vroman,* 52 Cal.App.2d 297, 306 [126 P.2d 419], (petition for hearing denied).) In *Ryan* v. *Motor Credit Co.* (1941), 130 N.J.Eq. 531 [23 A.2d 607, 611], affirmed in (1942) 132 N.J.Eq. 398 [28 A.2d 181, 142 A.L.A. 640] (8-5 decision), cited by plaintiff, the borrower had obtained nearly 500 small loans from the same lender by using the names of nominees, which were often fictitious, forged, or "selected at random from telephone directories, from tombstones or taken from the thin air." These frauds

enabled the parties to circumvent the New Jersey Small Loan Act. The borrower was denied "a reward of $50,000 to $63,000 for his fraud on the statute." (23 A.2d 607, 624.)

Defendants were not fraudulent here; plaintiff had ample warning of the usurious nature of the loan but persisted in making it. Defendants did not attempt to recover the interest paid until sued by plaintiff in regard to another matter. There was no attempt to insert secretly a usurious rate of interest in order to avoid the payment of any interest or to take advantage of the treble damage provisions of the Usury Law. The trial court therefore did not err in permitting recovery of the interest paid.

The part of the judgment ordering that plaintiff take nothing by her action for rescission is reversed. The part of the judgment that defendants recover judgment against plaintiff upon defendants' counterclaim is affirmed. The appeal from the order denying the motion for new trial is dismissed. Each party is to bear his own costs on this appeal.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.

