[Civ. No. 4747. Third Appellate District.—April 7, 1933.]

FRANK W. AITKEN, Appellant, v. SOUTHWEST FINANCE CORPORATION OF CALIFORNIA (a Corporation), Respondent.

Black, Hammack & Black and Carey McWilliams for Appellant.

Aitken & Aitken for Respondent.

PARKER, J., *pro tem.*—The court below sustained defendant's demurrer to plaintiff's second amended complaint,

without leave to amend, and thereafter entered a judgment of dismissal. Plaintiff appeals, and the sole question is as to the sufficiency of the complaint.

Preliminarily it may be noted that the demurrer was both general and special; it may be further noted that no serious contention is made on the point that the court did not permit plaintiff to further amend.

Appellant states in his brief that the action was brought for the recovery of interest and penalties under the Usury Law; recovery of money paid under duress; recovery of damages for fraud. We note this statement merely as indicative of appellant's own idea of his cause of action.

We will summarize and analyze the pleading before us and in so doing will employ the less confusing form of narrative. The complaint was filed December 15, 1928. A certain corporation called the Rock Company was in existence during all of the year 1926, and during all of April of that year Mr. Davison was the vice-president and a director of said corporation.

On April 9, 1926, plaintiff agreed with the Rock Company to purchase all of its property for the sum of $100,000. The terms of purchase contemplated installment payments covering a period of years. As a part of the purchase price plaintiff was to pay certain liabilities of the company, after deduction of any proper offsets then known or thereafter discovered. The property purchased included a gasoline shovel. As a part of the transaction it was agreed that the Rock Company would obtain for its own benefit, a loan of not more than forty-four hundred dollars ($4,400), and give its note therefor payable in not less than ten equal monthly installments, with interest at eight per cent per annum, and that said company would give a chattel mortgage on said shovel as security for the payment of the note. It was agreed that plaintiff would take title to said shovel subject to said mortgage and pay said sum of principal and interest secured thereby.

It is here that defendant first comes into the pleading. Davison, vice-president of the Rock Company as aforesaid, applied to defendant for the mortgage loan. This mortgage transaction was consummated. The Rock Company executed a note for $4,400, payable to Davison and executed the chattel mortgage securing said note. The note was indorsed

over to defendant and the chattel mortgage assigned to defendant.

Plaintiff is informed and believes that the agreement between defendant and the Rock Company was and is that defendant advance to Rock Company only $4,000 and that therefore the note and mortgage evidencing a promise to pay back $4,400 with interest at eight per cent per annum are tainted with usury.

The note and mortgage were executed in contemplation of the sale of the shovel to plaintiff and with the knowledge of all parties, including defendant, that the payments to be made on the note were to be made by plaintiff only. Defendant has full knowledge of the situation and of plaintiff's agreement of purchase and the terms thereof.

The defendant actually loaned to said company the sum of $2,000 up to July 12, 1926. On April 30, 1926, plaintiff, under his agreement of purchase, received from the Rock Company a bill of sale of the shovel, and ever since said time plaintiff has been the owner thereof subject to the lien of said chattel mortgage.

At the time of the agreement there were listed among the liabilities of the Rock Company certain notes executed by the company to Fewel-Webb Company, a corporation, in the sum of $7,242.74 with interest, on which notes the Rock Company was then indebted in a sum not exceeding $6,000. Prior to June 26, 1926, these notes had been assigned and indorsed by payee corporation to defendant and indorsed and guaranteed by certain named stockholders of the said corporation and thereafter defendant was the owner of the notes.

On or about June 26, 1926, the defendant notified plaintiff and the Rock Company that default had been made in the payments under the note secured by chattel mortgage (hereinbefore mentioned as being secured by the shovel), and defendant elected to declare the entire amount of said note due and payable immediately, as per the terms of the note, providing for an accelerated due date. No default had been made in any payment required by said note as defendant had in its possession the sum of $2,000, which it was then holding for the account of said Rock Company and which was applicable on the note.

Thereupon and thereafter defendant threatened to foreclose said mortgage at once, by summary sale of the shovel. Through this threat of sale, and as a condition of forbearance from foreclosure and by agreeing to accept further payments, the defendant compelled plaintiff to agree to purchase the Fewel-Webb notes hereinbefore mentioned, and compelled plaintiff to agree to purchase from defendant another note made by Fewel-Webb Company, in favor of defendant, on which latter note neither the Rock Company nor plaintiff were parties or at all liable.

On July 12, 1926, plaintiff entered into an agreement with defendant, called the note purchase contract, by the terms of which plaintiff agreed to purchase said notes for the sum of $8,013, to be paid in monthly installments. That on this date plaintiff paid to defendant the sum of $2,000 as the first payment on account of said purchase, and defendant advanced to the Rock Company the $2,000 balance due on the loan secured by the chattel mortgage on the shovel.

Upon the making of the note purchase contract, defendant agreed to forbear foreclosure of the chattel mortgage on condition that the payments required by said note purchase agreement were made promptly as they became due.

Plaintiff's agreement to purchase the notes was a part of the transaction by which defendant pretended to relieve plaintiff from the claimed default and agreed to forbear foreclosure. The notes of Rock Company to Fewel-Webb Company were executed under an agreement with the payee by the terms of which the amount of said notes was subject to an adjustment so that the Rock Company's liability would not exceed $5,900. That on July 12, 1926, the date of the note purchase contract, the Rock Company claimed offsets against the payee in a sum in excess of $6,000. Plaintiff was not at any time a stockholder in the Rock Company nor was he a party to the notes. Plaintiff is informed and believes that defendant knew these facts and knew that plaintiff was under no liability with respect to the notes.

That the notes were of a reasonable value of not over $6,000, if of any value at all, though plaintiff's information and belief is that the notes were of no value at all, and in this connection plaintiff states that these notes were of no value to plaintiff except for future use as an offset or credit in his agreement with the Rock Company, whereby

he assumed liability for the company's debts, the discharge of which would be credited against the purchase price; however, plaintiff has information and belief that the Rock Company had no liability at all on said notes and therefore no offset could accrue.

The notes, according to plaintiff's information and belief, were of no value to any other person or for any other person. All of the makers and indorsers were wholly insolvent. The Fewel-Webb Company in assigning the notes had given a creditor's preference to defendant in fraud of said Fewel-Webb's creditors.

Defendant knew the value of the notes and knew that said notes had no value, yet required plaintiff to purchase them for the purpose and with the intent to receive and take from plaintiff an additional bonus or payment on the mortgage loan in an amount exceeding the amount allowed by the Usury Law and thereby evade the said law.

Plaintiff would not have bought the notes save to protect against the foreclosure and he was compelled to enter into the note purchase agreement to protect himself against such a proceeding, due to the fact that plaintiff was unable to pay off the mortgage debt.

Plaintiff has paid to defendant and caused to be paid on account of principal and interest the sum of $9,400. Plaintiff is informed and believes that the amount of $9,212.14 thus paid has been applied as follows: $1700.60 on account of principal of mortgage note; $6,334.51 on account of principal of note purchase contract; $605.21 on account of interest on mortgage note; $571.79 on account of interest of note purchase agreement.

The sum paid on the notes is in excess of the reasonable value of said notes and the entire sum paid thereon was paid on notes of absolutely no value.

Within a year past plaintiff paid to defendant $523.93 as interest on mortgage note purchase contract and the further sum of $325.73 as payment of principal on note purchase contract.

The plaintiff claims the interest payments in said mortgage note is and was usurious.

On January 24, 1928, plaintiff paid the sum of $950 on account of the mortgage note and note purchase contract, of

which $247.03 was applied as interest on mortgage note for a period of nine months.

On March 2, 1928, plaintiff paid the sum of $374.19 on account of mortgage note and note purchase contract, of which $25 was applied as interest on mortgage note.

Plaintiff seeks judgment for three times the total of said interest payments and claims that by the application of the sums heretofore paid the entire obligation will be discharged.

Defendant threatens to foreclose the mortgage unless restrained and will sell the shovel at auction to the irreparable loss and damage of plaintiff. An accounting is necessary. In the note purchase contract it was agreed that defendant should retain title and possession of the notes and it was also provided that any payments made by the makers of said notes would be held by defendant and credited on the note purchase contract. Plaintiff does not know if any payments have been made and an accounting is necessary to ascertain such fact.

The defendant, fully advised of the worthlessness of the notes sold, compelled plaintiff to purchase with the intent to exact the amount of $8,013 for its forbearance in foreclosing the chattel mortgage.

The original agreement between plaintiff and the Rock Company involved the purchase of a rock, sand and gravel deposit with the equipment. That the shovel was necessary to operate the plant, and if that was gone plaintiff had no money with which to buy another, and the business would end, and plaintiff suffer great loss. The only way plaintiff could prevent the foreclosure was by agreeing to any proposition offered him by defendant.

Defendant represented to plaintiff that the Fewel-Webb Company, payee and indorser, as well as the other indorsers of the purchased notes, were responsible, which representation was untrue and known by defendant to be untrue and made for the purpose of inducing plaintiff to purchase the notes. No part of the claim of plaintiff has been paid.

The prayer of plaintiff is that the note and mortgage transaction be declared usurious; that defendant be required to account and that injunction issue against the sale of the shovel; that defendant be required to account and that plaintiff have judgment as provided in the Usury Act. Incidentally plaintiff asks $25,000 exemplary damages.

We have thus detailed the complaint for the reason that excerpts taken therefrom might not sufficiently disclose the nature of the pleading. We have omitted, however, the epithets usually abundant in similar cases; naturally there is a generous sprinkling of "wrongfully", "maliciously", "fraudulently", and kindred adjectives and adverbs.

We agree with the judgment of the court below. The complaint does not state a cause of action in favor of plaintiff and against defendant. A fair reading of the complaint will center the controversy around the chattel mortgage transaction in the first instance.

It is clear that plaintiff's agreement provided that he should buy the shovel subject to a chattel mortgage for $4,400 and that this amount should be credited as against the purchase price. In other words, his agreement was to pay $100,000 for the entire property; he takes the shovel, subject to a $4,400 chattel mortgage, and his debt to the Rock Company is thereby reduced by that amount. In no way does he suffer even though he does pay off the mortgage loan.

The rule is stated in 27 Ruling Case Law, page 288, as follows:

"A vendee who as a part of the purchase price assumes and agrees to pay a mortgage on the property sold is estopped from asserting that the obligation secured thereby is usurious. He is not borrowing money . . . is not a needy debtor oppressed by demands difficult to meet and which harass him beyond the stage where prudence and sound judgment guide his conduct. On the contrary he has an amount of money to invest with a surplus he desires to use. He is perfectly free."

Abundant authority supports the rule: *Matthews* v. *Ormerd,* 140 Cal. 578 [74 Pac. 136]; *Espositi* v. *Rivers Brothers, Inc.,* 207 Cal. 570 [279 Pac. 423]; *Zimmerman* v. *Boyd,* 97 Cal. App. 406 [275 Pac. 509]; *Ames* v. *Occidental Life Ins. Co.,* 210 Cal. 271 [291 Pac. 182].

In *Lee* v. *Stiger,* 30 N. J. Eq. 610, the court says:

"The reason of the rule is obvious. The statute against usury is designed to give protection to the borrower against the greed of the lender and not to afford any mere adventurer who may happen to slip into the seat of the bor-

rower a right to speculate on a violation of law which has done him no harm and caused him no loss.''

■ The subsequent transactions involving the so-called note purchase contract add but little to the cause of action attempted to be stated. These notes were liabilities of the Rock Company and if paid by plaintiff would offset his obligation under the original purchase plan. It may be noted that the original contract of purchase is not attacked in any way and no relief sought thereunder. This complaint concedes this value in the notes though incidentally claiming some ''adjustments'' due to fix the complete liability of the maker.

The notes in the hands of defendant represented a liability which plaintiff had assumed. Plaintiff was specifically liable to defendant on the chattel mortgage loan and the security therefor was in his possession. Nothing unjust or inequitable results from defendant insisting or urging a liquidation of the notes as a condition of forbearance.

■ The balance of the chattel mortgage loan retained by defendant was for the use and benefit of the Rock Company and could not be applied to discharge the mortgage debt of plaintiff. The complaint would advance the argument that if A has a chattel mortgage on the goods of B in the amount of $4,000, and in truth and in fact A has advanced but $2,000 thereon, then the balance of $2,000 could be applied to cancel the $2,000 advanced. Not a sound contention. Appellant argues that the requirement and demand of defendant that plaintiff purchase the notes was within the Usury Act, inasmuch as it exacted an exorbitant price as a condition of extending time.

The first answer would be that to plaintiff the notes were of their face value as medium of offset on the original purchase price. The mere conclusion of the pleader that the notes had no value cannot be considered as against a specific allegation of fact showing full value of the one seeking relief.

■ Under the original contract of purchase, plaintiff assumed the liabilities of the Rock Company, liquidation of which would be credited on the purchase price. Therefore, if defendant exacted a discharge of the Rock Company's notes held by defendant, it did no more than enforce a lawful demand. There can be nothing of usury in such an

act. Whatever may have been the necessities of plaintiff they were created by his own contract free from fraud or duress.

We know of no rule of law which compels a creditor to forbear enforcement of one unpaid debt merely because the same debtor is obligated to him upon another account. We might concede the law to be that a contract for the extension or renewal of a valid obligation at an illegal rate of interest is usurious in as far as such renewal or extension is concerned (39 Cyc. 993) or, as stated in *Cobb* v. *Morgan,* 83 N. C. 211, where the payee of a note, which was good as it originated, makes a special contract, for a usurious rate, afterward, to forbear enforcing payment, this is a special contract of forbearance which is usurious.

Plaintiff was in no sense a party to the mortgage loan. The purchase contract authorized the Rock Company to borrow $4,400 for its own benefit and mortgage the shovel that plaintiff was to purchase and hold subject to such mortgage. It seems clear that if under these circumstances the shovel had been destroyed, the plaintiff would have had no liability excepting such as, perhaps, he might assume as an offset against the purchase price as per the agreement between himself and Rock Company. Recognizing the intent of the laws relating to usury, it can readily be seen that the purpose thereof was to protect an indigent or oppressed debtor, and that such laws could and do have application on extensions and forbearance as well as on the original loan. But the usury laws were never intended as means to promote fraud or as a cloak for the schemer.

Plaintiff here sets up that he purchased for $9,000 notes worth nothing to secure an extension on a $4,000 loan. In other words, he gave $9,000 to keep from paying $4,000, which latter amount was secured by property worth not less than $10,000. But his same complaint sets up that he received or would receive a credit on his own liabilities for the full amount paid for the notes. The notes, if taken during the period of negotiability, were not subject to latent claims of the maker, and reading the complaint most strongly against the pleader, we assume such to be the case.

Likewise it appears that the plaintiff was in possession, under a contract of sale, of all the property of the Rock Company, which contract of sale, covering all of the assets

of the said Rock Company, left the latter insolvent. Plaintiff was using the shovel, which was therefore constantly diminishing the value of the security. Defendant's demands against the Rock Company could be satisfied only out of the company's assets, which plaintiff held under a liability to liquidate the said demands at least in as far as the sale price would allow. Under these circumstances there was nothing usurious or oppressive in defendant demanding some security or assurance as to the payment on the unsecured notes before agreeing to forbearance.

At no stage of the proceedings, to repeat, did the relationship of borrower and lender exist between the parties. And in concluding this phase of the case we may note that the duress or hardship alleged by plaintiff as to his compulsion in agreeing to purchase the notes is "that he could not prudently refuse".

Defendant had additional grounds of demurrer, namely, uncertainty, unintelligibility and ambiguity. There were some fourteen specifications thereof. Without again analyzing the complaint we find the specifications to have been well taken. As these are made grounds of demurrer a trial court must consider them and, if well taken, sustain the demurrer. The rule is that where a demurrer is sustained on these special grounds the court should allow leave to amend.

Yet after three attempts, and the pleading remains uncertain, it is a fair presumption that no clear cause of action can be stated. (*Consolidation Concession Co.* v. *McConnell*, 40 Cal. App. 443 [180 Pac. 842].)

The record before us discloses no request for leave to amend, so therefore no abuse of discretion is presented. (*Morrison* v. *Land*, 169 Cal. 590 [147 Pac. 259].)

Just as an instance of uncertainty the allegations of the complaint are that plaintiff assumed "certain liabilities". Defendant was entitled to know whether the notes sold were among the liabilities assumed. And further, the allegations that if the notes sold had "any value at all", it would be by means of plaintiff's claim of set-off on the purchase.

And so on throughout a voluminous complaint we find jumbling of facts, one paragraph qualifying and challenging another to the end that the action of the trial court could not have been otherwise on the special demurrer.

The original complaint was filed in December, 1928, the second amended complaint in March of 1930, and the matter had been argued and re-argued on motions and on demurrer.

The appellant, in reference to the special demurrer, seems to ignore the merit thereof, but contents himself with the statement that, regardless of the correctness of the trial court's holding, the court was not justified in sustaining the demurrer on those grounds without leave to amend. This is not an arbitrary rule. Where, as here, many allegations are set forth on the pleader's information and belief only, there must come a time when both the court and defendant may insist upon certainty sufficient to demand reply and frame an issue.

When the uncertainty, etc., is three times pointed out and is of such a character as would leave any issue joined one of pure conjecture, the abuse of discretion is not apparent in denying leave to amend.

We are of the opinion that the complaint was subject to both general and special demurrer and therefore the judgment is affirmed.

Thompson, J., and Plummer, Acting P. J., concurred.