## WOOD vs. LAKE, impleaded, &c.

It is only where an answer contains new matter, constituting a counter-claim, that a written reply or denial is required or permitted.

To an answer not containing matter of set-off or counter-claim, there was a reply. There was no demurrer to the answer or to the reply, and at the hearing no objection was made to either, in form or substance, and no evidence was offered under either: *Held*, that no question, as to the sufficiency of the answer or of the reply, was presented by the record.

To an action in a court of this state, for the foreclosure of a mortgage, the answer of the mortgagor alleged the pendency of a subsequent suit in the district court of the U. S., in the nature of a creditor's bill brought against

him and the plaintiff in the foreclosure suit and her husband, in which the complainants, judgment creditors of the husband, asked a decree that the mortgagor should pay to them money due upon the mortgage, which was averred to belong to the husband, and not to the plaintiff in the foreclosure suit; and the answer prayed that the foreclosure suit might be stayed until the suit in the U. S. court should be determined. *Held*, on demurrer, that the answer was not sufficient, either as a bar to the action or as a ground for asking a stay of proceedings.

A prior action is not abated by a plea of another action for the same cause, between the same parties, *afterwards* commenced.

The rule that a subsequent action is abated by a former one between the same parties, for the same cause of action, it *seems*, is confined to cases where both actions are pending in courts of the *same* state or government; and in general the parties must be not only the same persons, but must be the *same as plaintiffs and as defendants.*

So far as it concerns the purposes of such a plea, the courts of the different states and of the United States are, as to each other, regarded as foreign tribunals.

Where an action is brought by a creditor against his debtor, and a garnishee proceeding against the debtor for the same cause of action is subsequently commenced in a court of a different jurisdiction, the action will not be stayed in the court whose jurisdiction first attached, especially when that court has ample power, if asked, to give the plaintiff in the second action the relief to which he may be entitled.

Whether the defendant in the foreclosure suit would have been entitled to a stay of proceedings, until the determination of the suit by creditor's bill, had both suits been pending in courts of this state; and what the practice is in cases where a garnishee proceeding is commenced against a debtor during the pendency of an action against him by his creditor for the same demand, in courts of the *same* state or jurisdiction, discussed *per* Dixon, C. J.

A plea of usury under the law of 1856, need not aver a tender of the principal; and since the repeal of that law by chap. 160, General Laws of 1859, a tender of the principal can, under no circumstances, be required.

Where a statute punishes the taking of excessive interest, by the infliction of fines or forfeitures upon the person who takes it, the person paying the same may, independently of any remedy afforded by the statute, maintain an action for money had and received, as at the common law, to recover back the excess so paid.

The borrower of money at usurious interest, under the law of 1856, who chose, by not bringing his action in one year, to waive his right to a treble recovery of the excess paid by him above lawful interest, still retained the right to recover back such excess by an action for money had and received, at any time within the period prescribed by the statute of limitations for that species of action.

When sued by the lender, for the principal, the borrower may set off the amount of excessive interest so paid.

A case was heard in the absence of the defendant's attorney, who, as soon as practicable, moved the court to set aside the judgment, upon his affidavit, stating that just before the case was reached he had informed the judge that he could not attend to the trial of it till he was through with a case set for trial that day in another court, and that although the judge did not positively say so, he received the impression from what the judge said, that the hearing should be postponed for several days, and under that impression, went to

June Term, 1860.

WOOD v. LAKE.

attend the trial in the other court, in which he was necessarily engaged for several days. It did not appear that the counsel on the other side was present when the conversation with the judge took place. The court refused to set aside the judgment. *Held*, that whether this court would exercise a supervisory power over the discretion of the court below, when an arrangement is made, as to the time of trial of a cause, between the judge and the counsel of one of the parties, in the absence of the other—a point not decided —it did not sufficiently appear, in this case, that the discretion of the court below had been improperly exercised.

APPEAL from the Circuit Court for *Milwaukee* County.

This action was commenced on the 11th of May, 1859, by *Martha A. Wood*, to foreclose a mortgage executed to her by *Lake*, to secure the payment of his note for $2,374.62, dated May 1st, 1858, payable to her one year after date, with twelve per cent. interest. Answer: ˙ 1. As to $1,900 of the sum demanded, that certain creditors of George C. Wood, the husband of said *Martha*, who had judgments against him in the United States district court for the district of Wisconsin, for over $4,000, (upon which executions had been returned, no property), filed a creditor's bill in said district court on the 7th of June, 1859, against said George C., *Martha* and the defendant *Lake*, (citizens of Wisconsin), alleging that $1,900 of the money for which said note was given was the property of said George C., (which allegation the answer averred to be true), and praying a decree against the defendant *Lake* for the money owing by him on said note, to the extent of $1,900 and interest from its date, which suit, process having been served therein in said month of June, was still pending. These facts were pleaded in bar of the further prosecution of the action as to said sum of $1,900 and interest, until said suit in the district court should be determined, and the defendant asked that all proceedings in the present suit should be stayed until that time. 2. That it was corruptly agreed between the plaintiff and said *Lake*, at the time of the execution of the note, that he should pay interest on the sum specified therein for one year at 15 per cent. per annum, in pursuance of which agreement he had paid to ‚the plaintiff $60 for the use of said sum for one year, in addition to the 12 per cent. interest expressed in the note, which sum of $60 was due from the plaintiff to him, and he

offered to set off the same against the plaintiff's demand.
3. A set-off and counter-claim for services, &c.

There was a fourth ground of defense not in the nature of
a set-off or counter-claim, and a *reply* to it, but as there was
no demurrer to either, nor any evidence offered under them,
they need not be further noticed. The answer was verified.
The plaintiff replied to the 3d defense, and demurred to the
1st and 2d.

On the 28th of November, 1859, in the absence of the at-
torney for the defendant, the court ordered it to be referred
to the clerk to report the amount due on the note and mort-
gage (who reported the amount due to be $2,824, 21), and
confirmed the report, sustained the demurrers to the 1st and
2d defenses, and rendered final judgment of foreclosure and
sale for the amount reported due, and costs, reciting in the
judgment, that the issues of fact on the 3d and 4th defen-
ses were found for the plaintiff. Three days after the judg-
ment was entered, the plaintiff drew up the decision of the
court, and dated it December 1st, 1859, which was the time
it was signed by the court. The clerk filed this decision as
of November 28th, 1859, and entered it on his record as
made previous to the rendition of .the judgment, but it bore
date December 1st, and was a decision sustaining the demur-
rers, and finding in favor of the plaintiff on the issues of fact.
On the 3d of December, the defendant *Lake* excepted to the
order sustaining the demurrers, and to the decision, and to
the final judgment; and upon the record and the affidavit of
his attorney, obtained a rule to show cause why the judgment
and proceedings on and after the 28th of November, should
not be set aside and vacated for reasons stated in the affida-
vit and for defects and irregularities on the face of the rec-
ord. The affidavit stated in substance that the affiant was
the sole attorney of the defendant *Lake* in this case; that
just before this case was reached on the docket for trial in
its order, and just before 2 o'clock of the afternoon of Novem-
ber 28th, he appeared in said court, and informed the judge
that he had a jury case set down for trial in the United States
district court at 2 o'clock that afternoon, and that he could
not attend to the hearing of this case until he was through

with said jury trial; and that, although the judge did not positively say that he would on that account postpone the hearing of this case until the affiant was through with said jury trial, he received the impression from what the judge said, that the hearing of this case should be postponed until the 1st of December, and under that impression and belief, went to attend to the trial in the district court in which he was engaged until after 1 o'clock of December 1st; that before said jury trial was finished he was informed that the circuit court had proceeded, soon after he left, with the hearing of this suit, and had on that day rendered final judgment therein; that immediately after the trial of said jury cause the affiant proceeded on important professional business which did not admit of delay, to Madison, from whence he had returned as soon as he could, and immediately afterwards made said affidavit and application. The court over-ruled the motion to vacate the judgment, to which the defendant *Lake* excepted, and appealed from the judgment and from the order denying the motion.

*Jason Downer*, for appellant, contended that by the practice of some courts a stay of proceedings should have been granted, upon the facts alleged in the first defense, (Drake on Attachment, chap. 32); that the demurrer to the second defense was bad under the decision of this court in *Platt vs. Robinson*, 10 Wis., 128; that the $60 should have been allowed as a payment on the note, any money paid after the making of the contract, even though paid as usurious interest, being by law applied to the payment of the principal, (*Ward vs. Sharp*, 15 Vt., 115; 7 Met., 525; *Tuthill vs. Davis*, 20 John., 285); but that, if the $60 were to be regarded as paid for usury, then the defendant, not having sued within a year to recover treble that amount, had a right of action at common law for the amount so paid, and interest thereon, at any time within six years, (*Bank vs. Ensminger*, 7 Blackf., 107, and authorities there cited; *Willie vs. Green*, 2 N. H., 333; *Bond vs. Jones*, 8 Smedes & Marsh., 368; *Pierce vs. Conant*, 12 Shep., 33; *Grow vs. Albee*, 19 Vt., 540; 12 Mass., 35; 13 id., 105; *Wheaton vs. Hibbard*, 20 Johns., 290); and that being thus recoverable, it was properly pleaded as a set

off. Counsel also contended that the court erred in overru-
ling the motion to vacate the judgment and proceedings, af-
ter having rendered said judgment under the circumstances
set forth in his affidavit; and that the plaintiff's reply to the
defendant's fourth defense, was insufficient.

*James H. Paine & Son*, for respondent, cited 1 Wheat.,
215; 21 Wend., 339; 3 id., 262; 3 Sumner, 165; 14 N. H.,
373; 12 Johns., 99; *Bowne vs. Joy*, 9 id., 221.

*By the Court*, DIXON, C. J. It is unnecessary for us to
determine in this case whether this court would, under any
circumstances, take notice of an understanding or arrange-
ment, verbal or written, between the court before which an
action is pending and the counsel for one of the parties to it,
which, like that sugested in the affidavit of the appellant's
counsel, was arrived at or made in the absence and without
the assent of the opposite party or his counsel, and relates to
the time of the trial, the continuance or other disposition of
such action; and whether, if we could take such notice, we
could reverse the judgment or award a new trial in such ac-
tion, on account of a violation of such understanding or ar-
rangement, on the part of the judge with whom the same
was had. We may be permitted to suggest that such a
cause of error would, to say the least, be a very impressive
novelty in legal practice. And if any court should be in
the habit of thus forestalling its own action, it may well be
doubted whether the arrangements or understandings would
be of such a nature that their observance could be enforced
by an appellate tribunal. They would be contrary to the
legal rights of the opposite party, and opposed to all the rules
of judicial propriety and decorum. Neither the counsel nor
the party would be justified in seeking, obtaining or relying
upon any such intimations. But nothing of the kind is es-
tablished here, and therefore it is not a matter to be dis-
cussed. The most that can be said is, that the affidavit very
obscurely hints that the presiding judge, in reply to the ap-
plication of counsel, intimated that the trial would be post-
poned. It is admitted that the judge did not say that it
would. The affair took place in open court, whilst the mind

of the judge was undoubtedly occupied with the transaction and dispatch of other business. It was purely conversational in its character. In this position of the case, and upon the statements of this affidavit, it would be strange indeed if we were to say that the counsel was deceived or misled. We cannot do so. Nor can we indulge in any presumptions against the fairness or impartiality of the judge. We must presume that he did what was just and proper. The matter occurred in his presence and hearing, and he must know much better than we possibly can, what final disposition of it, under all the circumstances, was most equitable and just between the parties. It was therefore a subject for his discretion and control, and not ours; and we cannot interfere with the judgment on account of it.

The counsel for the appellant discussed, at some length, the sufficiency of the facts set forth as a distinct and separate defense, in the fourth subdivision of the answer, and also the sufficiency of the reply of the plaintiff to that part of the answer; but no such questions are before us for decision on this appeal, and consequently we can express no opinion upon them. The matters stated in that portion of the answer do not constitute a counter-claim, or any thing in the nature of one. They are, if good, but general matters of defense merely, and being such, no reply to them by the plaintiff was necessary or proper. They are to be deemed traversed in law, without any formal or written replication from the plaintiff. It is only when the answer contains new matter constituting a counter-claim, that a written denial or reply on the part of the plaintiff is required or permitted. R. S., chap. 125, secs. 15 and 32; *Roys vs. Lull*, 9 Wis., 324. That part of the answer not having been demurred to by the plaintiff, its sufficiency cannot here be inquired into. The reply to it being unnecessary and improper, it is immaterial whether it be good or bad. But if it were proper and permissible, its regularity or sufficiency in form or substance could not here be questioned, because the defendant did not demur to it, as he should have done under the provisions of sec. 17 of the same chapter. The case was brought to trial, and judgment rendered in the court below, in the absence of

the appellant and his counsel. No objection was there made either to the form or substance of the answer or reply; no testimony was offered under either, and no ruling or exception as to either was had or taken, and consequently the record discloses nothing for us to act upon.

The only other questions left for our consideration, are those involved in the demurrers of the plaintiff to the separate matters of defense stated in the first and second subdivisions of the answer. As to the first, I am satisfied that it is well taken, whether the facts set forth in the answer were relied upon as a bar to the further prosecution of this action, or were introduced merely for the purpose of asking for a stay of the proceedings. It is conceded by the appellant's counsel that they are no bar. The general rule of law is, that the pendency of a former suit for the same cause of action, and between the same parties, may be pleaded in abatement of a suit subsequently commenced; but the converse of the proposition, it is said, was never true. The first suit cannot be abated by a plea that another for the same cause was afterwards commenced. *Renner vs. Marshall*, 1 Wheat., 215; *Nicholl vs. Mason*, 21 Wend., 339; *Haight vs. Holley*, 3 id., 258. But the rule that a subsequent action may be thus abated, it seems, is confined to those cases where the former action is pending in the courts of the same state or government, and does not apply where such former action was commenced and is pending before the courts of a foreign or different jurisdiction. *Bowne et al. vs. Joy*, 9 Johns., 221; *Walsh vs. Durkin*, 12 id., 99; *Wadleigh vs. Veazie*, 3 Sumner, 165. The reasons, as given in the first named case, are, that the defendant would not be obliged to pay the money twice, since payment, at least, if not a recovery in the one suit, might be pleaded *puis darrein continuance* to the other suit; and if the two suits should even proceed *pari passu* to judgment and execution, a satisfaction of either judgment might be shown, upon *audita querela* or otherwise, in discharge of the other. In *Wadleigh vs. Veazie*, where the pendency of a prior action in a state court was pleaded in abatement of a subsequent action in the circuit court of the United States, it was said that congress having under the constitution con-

ferred upon the circuit court jurisdiction over the case, and that jurisdiction having been sought, the court could not escape from the performance of its duty because another action had been instituted in the courts of the state. So far as it concerns the purposes of such a plea, the courts of the different states and of the United States are, as to each other, regarded as foreign tribunals. Here, the action in the district court was commenced after the present one was instituted, and I know of no principle upon which the proceedings in this can be abated or arrested on account of the commencement of that.

There is another difficulty in the way of regarding it good as matter of abatement, even if the cause of action be admitted to be the same in both cases. The parties are different. They must in general be the same parties plaintiff and defendant in both actions. And it is not sufficient that they be the same persons, but they must be the same *as plaintiffs and defendants ;* and if their position in this respect be reversed, the plea will be bad. *Wadleigh vs. Veazie, supra.*

But conceding that the action in the district court (which is a creditor's suit, to which the plaintiff and defendant in this action are parties defendant, and in which the note and mortgage here sued upon are charged to be the property of George C. Wood, the judgment debtor therein) may, as to the plaintiff, be considered as a process of garnishment or foreign attachment, still I do not think, as is insisted by the appellant's counsel, that its pendency furnishes a good ground of application to the discretion of the court for a stay of proceedings in this action. The general rule which prevails upon this subject, might, perhaps, have enabled the appellant to apply to the court for a stay of proceedings in this action, until that one was determined, if that action had been commenced in the same or some other court of this state. In many of the states it is held, that an action may be commenced and sustained against a garnishee during the pendency of an action previously commenced against him by his creditor for the same debt, provided the creditor's action is in such a situation that he can, if charged as garnishee, avail himself of the judgment as a bar to a recovery by the credi-

tor. If, before he is summoned as garnishee, issue has been joined in the creditor's action, or the cause has been referred by a rule of court, under an agreement that judgment should be entered according to the report of the referees, or it is otherwise so situated that he cannot plead *puis darrein continuance*, then the garnishment is void. The reason assigned is, that if he could be thus made liable, he would have two judgments against him for the same debt at the same time, and might be compelled to pay twice. But where he can avail himself, by plea to the action of his creditor, of a judgment against him for the debt in respect of which he is garnished, then the service of the process of garnishment is a good ground for delay in the original creditor's action, until the garnishee suit is determined; and such delay will, under proper circumstances, be allowed by the court before which such original action is pending. This is the doctrine of the courts of Massachusetts, Vermont, New Hampshire, and, perhaps, some other states. *Thorndike vs. De Wolf,* 6 Pick., 120; *Trombly vs. Clark,* 13 Vt., 118; *Wadsworth vs. Clark,* 14 id., 139; and *Foster vs. Dudley,* 10 Foster, 463. See also *Spicer vs. Spicer,* 23 Vt., 678, where proceedings on the judgment in an action by the creditor were stayed until he should procure the debtor's discharge from a judgment which had been obtained against him as trustee in an action commenced after that of the creditor. In other states it is decided, that the pendency of an action by the creditor is not, at any stage, an answer to a proceeding against the debtor as garnishee. *Smith vs. Barker,* 10 Maine, 458; *McCarty vs. Emlen,* 2 Dallas, 277; and *Sweeny vs. Allen,* 1 Penn. St., 380. In *Wadleigh vs. Pillsbury,* 14 N. H., 373, it was determined that the pendency of an action against the debtor as garnishee did not preclude the creditor from commencing an action in his own name for the same debt. But all these were cases where the actions were commenced and pending in courts of the same jurisdiction. Where they are instituted and pending in courts of different jurisdictions or sovereignties, no such practice prevails, and no rule of comity is allowed to influence the proceedings of the court whose jurisdiction first attaches. The doctrine of the law upon this subject is discussed by the Su-

preme Court of the United States, in the case of *Wallace vs. McConnell*, 13 Peters, 136.    In that case, McConnell sued Wallace in the district court of the United States for the district of Alabama.    After the action was brought, Wallace was summoned as a garnishee of McConnell, in a county court of Alabama, and judgment was there rendered against him. He then plead the judgment in bar of the action pending in the district court, and the court, on demurrer, held the plea bad.    The Supreme Court, on this point, say: "The plea shows that the proceedings on the attachment were instituted after the commencement of this suit.    The jurisdiction of the district court of the United States, and the right of the plaintiff to prosecute his suit in that court, having attached, that right could not be arrested or taken away by any proceedings in another court."    They held that the attachment proceeding, to have been of any avail as a defense to the action in the district court, must have been commenced *first*, and observed that if that doctrine was well founded, the priority of suit would determine the right; that the rule must be reciprocal; and when the suit in one court is commenced prior to the proceedings in attachment in another court, such proceedings cannot arrest the suit, and the maxim, *qui prior est tempore, potior est jure*, must govern the case.    It may be said that the court was then speaking of the effect of such subsequent action as a bar.    But I can see no good ground for distinguishing between their operation in that respect and when they are relied upon for the purpose of securing a stay of the proceedings in the first action.    It would be irrational and absurd to say, that the court which had first acquired jurisdiction should arrest its proceedings, because the court of another government, having concurrent jurisdiction over the same subject matter and parties, had *subsequently* attempted to take jurisdiction of the case; and particularly would this be so when the court which had first obtained jurisdiction, is clothed with ample power, and would, if asked, give to the plaintiffs in the second action the relief to which they might be entitled.

The demurrer to the second separate defense set up in the answer should have been overruled, and for that reason the

judgment of the circuit court must be reversed.  No objection is taken to this part of the answer, either in form or substance, so far as it concerns the allegations of the making of the usurious and corrupt agreement, and the payment of the excessive interest in pursuance thereof.  In this respect it is admitted to be sufficient.  It was demurred to, and the demurrer sustained, because it contains no averment that the defendant had tendered to the plaintiff the principal sum loaned.  In the case of *Platt vs. Robinson*, decided at the June term, 1859, we held that the act of 1856 did not make the tender a condition precedent to the borrower's right to plead, or to bring his action and establish the usury, but that it was only a condition precedent to his having the benefit of his plea when established before the court, and consequently that no averment of it in his complaint or answer was necessary.  But the act of 1856 is now repealed, and this case comes more particularly within the doctrines of this court in the case of *Root vs. Pinney*, decided at the last term. [11 Wis., 84.]  In this latter case it was held that the provisions of the law of 1856, regulating the tender, were remedial merely; that they did not reach or affect the contract itself; and that as they were repealed by chapter 160 of the General Laws of 1859, a tender of the principal sum loaned can, under no circumstances, be required.  That decision makes the point under consideration doubly conclusive against the demurrer.·

There is another question raised upon this portion of the answer, which was argued at the bar, and which we are called upon to determine.  By the law as it stood when the note and mortgage upon which this suit is brought, were executed, the taking or agreeing to take illegal interest did not render the contract void.  It was good to secure the repayment of the principal sum loaned, but no interest whatever could be recovered upon it.  Chapter 55, Laws of 1856.  ·The answer alleges the payment by the defendant to the plaintiff, of the sum of $60, as interest upon the sum of money mentioned in and secured by the note and mortgage, over and above the highest rate fixed by law; and in addition to setting up such usurious agreement and the payment

of the extra interest in pursuance thereof, as a general defense to the action, or for the purpose of preventing a recovery of anything more than the sum of money actually loaned, the defendant insists that the $60 shall be allowed to him and deducted from the amount of the principal sum loaned, by way of set-off or counter-claim, and that the plaintiff is only entitled to a judgment for the balance which shall remain after such deduction. After a full examination of the authorities on the subject, we are of the opinion that the position of the defendant's counsel is correct, and that if final judgment should be rendered upon the demurrer, or if upon a trial of the merits, it should be found that the allegations of the answer are true in this respect, the deduction should be made, and that the plaintiff's measure of damages would be the residue of the principal sum loaned, after the money thus paid has been taken out. A remarkable unanimity of opinion upon this question seems to have prevailed among the courts of Great Britain and those of the several states of the Union where laws against usury, properly so called, have existed. It has been universally held, where statutes forbid the taking of excessive interest, and punish a violation of their provisions by the infliction of fines, penalties or forfeitures upon the person who takes it, that the person who pays the same may, independently of the remedies afforded by the statutes, maintain an action for money had and received, as at the common law, to recover back the money so paid. In such cases, both parties are not understood to be *in pari delicto*, so as to preclude a recovery by either. Upon this subject, Mr. Comyn, in his Law of Usury, page 211, says: "And with regard to parties becoming *participes criminis*, the following distinction is laid down, viz. : between the prohibition of statutes made to protect the weak or necessitous from being overreached or oppressed, and the prohibitions of statutes enacted upon general reasons of policy and public expediency; in the latter case, all parties are equally criminal; in the former, the oppressor is alone within the pale of the law." The penalties of the law are all aimed at the lender and none at the borrower; and it appears to be clearly within the intent and meaning of the

June Term,
1860.

Wood
v.
Lake.

legislature, if not their words, that he shall not be permitted to retain or profit by money or property thus unlawfully acquired.    The provision of the law of this state, (sec. 3, chap. 172, Laws of 1851), by which every person paying a greater sum for the loan or forbearance of money than that allowed by law, might, if his action was brought within one year after such payment, recover back treble the sum so paid, confirms this view.    It shows that the legislature did not intend that the receiver should retain the money thus obtained, and that they did not consider both parties equally at fault. Otherwise they would not have permitted the borrower to recover back three times the amount and thus speculate out of the attempted extortions of the lender.    But if the borrower chooses, by not bringing his action within one year, to waive his right to a treble recovery, he may do so and still retain the right to maintain an action for money had and received, to recover back the excess actually paid, at any time within the period prescribed by the statute of limitations.    For the remedy given by the statute is cumulative and not exclusive, as has frequently been decided in other states where similar statutory remedies have been given. *Ward vs. Sharp*, 15 Vermont, 115 ; *Bank vs. Ensminger*, 7 Blackf., 107.    If the borrower may thus maintain his action for money had and received against the lender, it follows, as a matter of course, that he may, when sued by the lender to recover the principal sum loaned, or such other sum as, according to law, he may be entitled to receive, set off the amount of excessive interest so paid against the claim of the lender, and have the same deducted therefrom.    The party who paid money, as usury, *eo nomine*, had therefore, under the statutes as they existed from 1856 to 1859, three courses open to him, either of which he might pursue.    He might sue within one year for treble the amount, or afterward for the excess actually paid, or he might await the commencement of an action by the lender to recover the principal sum loaned, and have the excess deducted from it.    The doctrines of this opinion upon this subject will, in addition to the authorities above cited, be found to be sustained by the following referred to by the counsel for the appellant :    *Stevens vs. Lincoln*,

7 Met., 525; *Tuthill vs. Davis*, 20 Johns., 285; *Willie vs. Green*, 2 N. H., 333; *Bond vs. Jones*, 8 S. & M., 368; *Grow vs. Albee*, 19 Vt., 540; *Wheaton vs. Hibbard*, 20 Johns., 290; *Smith vs. Bromley*, Doug., 695, n.; and *Dey vs. Dunham*, 2 Johns. Ch. R., 191.

Our attention has been called to several cases decided by the supreme court of the state of Ohio, (11 Ohio, 417, 498; 12 id., 153, 544; 13 id., 115; and 17 id., 605), in which it has been held that usurious interest voluntarily paid, in that state, can neither be recovered back nor allowed as a set-off against the principal and legal interest actually due according to the terms of the agreement. The reason assigned was that which generally operates to exclude parties from any benefit or redress where the contract between them is prohibited by law, viz.: that both were *in pari delicto*, and the law would leave them where it found them. The obvious answer to these cases as authorities with us is, that it appears from them that they have in Ohio no law forbidding usury and punishing the party who takes it by penalties, forfeitures or an avoidance of his contract. The policy of that state differs from ours. It has never been fixed there against the usurer, as it has here, by legislative enactment. The only statute which they have upon the subject, provides that money due shall draw interest at six per cent. and no more, *and that no greater rate of interest shall be recovered.* 12 Ohio, 156; 13 id., 114. Hence, all contracts are good for the principal and legal interest. The legislature not having discriminated between borrower and lender, the courts could not; and the recovery of the excess only being prohibited, the courts very properly treated both parties as equally in the wrong.

The judgment of the circuit court is reversed, and a new trial awarded.