GEORGE B. CAREY, DOING BUSINESS AS WHITE SEWING MACHINE AGENCY, *v.* THE DISCOUNT CORPORATION, LIMITED, DEFENDANT, BISHOP NATIONAL BANK OF HAWAII AT HONOLULU, GARNISHEE.

No. 2455.

GEORGE B. CAREY, DOING BUSINESS AS WHITE SEWING MACHINE AGENCY, *v.* HONOLULU FINANCE AND THRIFT COMPANY, LIMITED, DEFENDANT, BANK OF HAWAII, LIMITED, GARNISHEE.

No. 2456.

ARGUED APRIL 30, 1942.          DECIDED JUNE 10, 1942.

KEMP, C. J., LE BARON, J., AND CIRCUIT JUDGE MCLAUGHLIN IN PLACE OF PETERS, J., DISQUALIFIED.

108

The foregoing two cases by the same plaintiff against different defendants involve the same issue. The demurrer of each of the defendants was sustained. From the orders sustaining the demurrers and dismissing the complaints the plaintiff has brought both cases here on exceptions where, by stipulation approved by the court, they were consolidated and argued together. The sole issue raised by the exceptions is: May a borrower who pays usurious interest, to wit, interest in excess of one per cent per month, pursuant to a written contract with a lender, maintain an action in assumpsit against the lender to recover the usurious part of the interest paid?

The pertinent provisions of our usury statute follow:

"Sec. 7052. Rate by Written Contract. It shall in no case be deemed unlawful to stipulate by written contract, for any rate of interest not exceeding one per centum per month, provided the contract to that effect be signed by the party to be charged therewith."

"Sec. 7053. Usury Not Recoverable. If a greater rate of interest than one per centum per month shall be contracted for, the contract shall not, by reason thereof, be void. But if.in any action on such contract proof be made that a greater rate of interest than one per centum per month has been directly or indirectly contracted for, the plaintiff shall only recover the principal and the defendant shall recover costs. If interest shall have been paid, judgment shall be for the principal less the amount of interest paid; provided, however, that this section shall not be held to apply to contracts for money lent upon bottomry bonds or upon other maritime risks."

Since 1905, when the first criminal usury statute was enacted, the taking of interest at a rate greater than two per cent per month has been prohibited and is punishable

by fine and imprisonment. (§ 7055.) By Act 222 (D-150), effective May 15, 1937, amending section 7055, the two per cent maximum was changed to one per cent. However, counsel agree that said criminal statutes have no application to this case nor does the record disclose any violations thereof.

Other provisions of the chapter entitled, "Interest and Usury," in which all of the foregoing provisions appear, fix the legal rate of interest in the absence of an express contract in writing and have no application in this case. (R. L. H. 1935, §§ 7050, 7051.)

Counsel for plaintiff first argue that at common law usurious interest voluntarily paid could be recovered; that the rule of recoverability of usurious interest voluntarily paid was incorporated in our statutory law by section 5, chapter 57, Haw. Laws 1892 (now R. L. H. 1935, § 1), and has not been abrogated by any subsequent statute. Said statute provides that "The common law of England, as ascertained by English and American decisions, is declared to be the common law of the Territory of Hawaii in all cases, except as otherwise expressly provided by the Constitution or laws of the United States, or by the laws of the Territory, or fixed by Hawaiian judicial precedent, or established by Hawaiian usage." Counsel for defendant counter with the argument that at common law recovery always depended upon statutory declaration of illegality, and that if the common law rule was incorporated as contended, it was repealed in 1931 by Act 137 (now R. L. H. 1935, § 7053), which declares that if a greater rate of interest than one per cent per month is contracted for, the contract shall not, by reason thereof, be void and prescribes the sole relief to which the borrower shall be entitled if he elects to avail himself of it.

It is settled in this jurisdiction that once it is ascer-

tained what the applicable rule of the common law was, we have no option but to apply it unless prevented by some one or more of the provisions of the adopting statute. (*Macaulay* v. *Schurmann,* 22 Haw. 140, 144; *Ah Leong* v. *Ah Leong,* 29 Haw. 770, 799.) But obviously, if as argued by defendant, section 7053 repealed the common law principle underlying the common law action for the recovery of usurious interest voluntarily paid, the order sustaining the demurrer was right, the common law being the sole basis of plaintiff's claim of right to maintain his action.

Counsel have based much of their argument on the history of the development of the common law with reference to the taking of interest for the loan of money and the remedies afforded the parties at different stages of its development. It is conceded that the Mosaic law prohibited the Israelites from exacting interest on loans to their brethren but permitted interest to be taken from strangers. (Deut., XXIII, 19, 20.) During the Middle Ages the people of England, under the influence of the English Church, entertained the opinion then current in Europe that the taking of any interest for the loan of money was a detestable vice, hateful to man and contrary to the laws of God. It is said that not only was the usurer liable during his life to the censure of the Church but after his death his chattels were forfeited to the King and his lands escheated to the lord of the fee. (*Gray* v. *Bennett,* 3 Metc. [Mass.] 522, 527.) In 1545, in response to the needs of expanding business and commerce, the statute of 37 Henry VIII, c. 9, was enacted. It authorized the taking of interest up to the maximum rate of ten per cent per annum, and provided that a loan at a rate of interest in excess of ten per cent per annum shall be wholly void, both as to principal and interest. (66 C. J. 142.) However, this law remained in force for only ten years when it was

repealed by the statute of 5 & 6 Edw. VI, c. 20, which prohibited the taking of any interest on pain of forfeiting the entire debt. This remained the law until 1570, when by the statute of 13 Eliz., c. 8, it was repealed and the statute of 37 Henry VIII, c. 9, was re-enacted.

Finally, in 1714, the statute of 12 Anne c. 16 was enacted. It provided, *inter alia,* "That no person * * * upon any contract, which shall be made from and after the nine and twentieth day of September, [shall] take * * * for loan of any monies, wares [etc.], above the value of five pounds for the forbearance of one hundred pounds for a year * * * and that all bonds, contracts, and assurances * * * for payment of any principal, or money to be lent * * * upon or for any usury, whereupon or whereby there shall be reserved or taken above the rate of five pounds in the hundred * * * shall be utterly void; and that all and every person * * * which shall *.* * receive, by way or means of any corrupt bargain, loan, exchange, chevizance, shift, or interest of any wares, merchandize, or other thing or things whatsoever, or by any deceitful way * * * for the forbearing or giving day of payment for one whole year, of and for their money or other thing, above the sum of five pounds for the forbearing of one hundred pounds for a year, [etc.], shall forfeit * * * the treble value of the monies, wares, merchandizes, and other things so lent." (Quoted from note, 28[a], 66 C. J. 142.) During the existence of the foregoing statutes it was universally held by the English courts that the borrower had the right to maintain such a suit as plaintiff here seeks to maintain.

In spite of the age-old aversion to the charging of high rates of interest, economists in the latter part of the eighteenth century, foremost among whom was Bentham, contested the soundness and practicability of laws restricting the charging of interest. Eventually, the writings of

Bentham and other economists influenced the repeal of all laws against usury not only in England but in most of the principal nations of Europe, the dates of the repealing Acts ranging from 1854 to 1867. In America the legislatures of many of the States fell in line with the European trend and repealed their usury laws. Massachusetts led off by repealing its usury laws in 1867 and since then they have not been re-enacted. By 1880 thirteen States were without any stipulated maximum rate. However, the pendulum soon swung the other way and by 1940 only four States, Massachusetts, Colorado, Maine and New Hampshire, were without statutes limiting interest rates in written contracts.

An article entitled, *A Survey of the General Usury Laws,* appearing in volume VIII, no. 1, page 36, of *Law and Contemporary Problems,* published by the School of Law of Duke University, contains the following interesting discussion of the remedies of borrowers in the various States after full performance of usurious contracts:

"Pursuant to the policy, embodied in the usury laws, of extending protection to the necessitious [sic] borrower by operating on the lender, two thirds of the states have statutes allowing the borrower or his legal representative, and in several states the assignee or judgment creditor of the debtor, to recover back usurious interest though paid to the lender voluntarily. * * * Such a right of recovery usually exists only by virtue of legislative fiat. Other states, which disallow recovery, take the view that the defense of usury is to be used only as a shield, not as a sword, and that voluntary payment constitutes a waiver of the defense. Under some statutes the amount recoverable may be double or treble, which may often exceed the forfeiture imposed when an action is brought by the creditor to enforce a usurious contract, apparently indicating that the actual taking or receiving of usurious interest and

the completion of a transaction tainted with usury is considered more odious than merely agreeing to take or receive an excessive rate. Usually recovery by the victimized borrower for his own benefit is subject to stipulated time limit; a number of states after the debtor's right of recovery has been barred, provide for an additional period in which stipulated officials may recover the amount paid in excess plus any forfeiture for the use of the school or poor fund as the case may be."

Prior to 1859 Hawaii had no statute limiting interest rates by written contract. From 1859 to 1898 our usury statute declared that "It shall in no case be deemed unlawful to stipulate by written contract for any rate of interest not exceeding two and one-half per cent. per month, provided the contract to that effect be signed by the party to be charged therewith." Civil Code 1858-1859, § 1482. The same Act also provided that "No action shall be maintainable, in any court of this Kingdom, to recover a higher rate of interest than two and one half per cent. per month, upon any contract made in this Kingdom." *Id.*, § 1483. In 1898 the two and one-half per cent per month maximum rate was reduced to one per cent per month but made no other change in the statute. Section 1482 has not since been amended and is still a part of our usury law. By Act 137 of the Session Laws of Hawaii 1931, section 1483, *supra*, as amended, was repealed and section 7053 was enacted as a substitute therefor. This Act, for the first time, declared that if a greater rate of interest than the maximum authorized by the statute shall be contracted for, the contract shall not, by reason thereof, be void. After the foregoing declaration as to the validity of a contract for a greater rate of interest than is authorized by the statute, the rights and liabilities of the parties to the contract in an action on the contract are set forth in the statute and provide ample protection to the borrower when sued upon

the contract. In fact, the statute gives the borrower more relief when sued on the contract than plaintiff seeks in this case. The statute makes no specific reference to the rights and liabilities of the parties, where, as here, the contract has been performed and the borrower sues to recover the usurious interest paid. That our lawmakers never subscribed to the ancient common law theory of inherent vice in the taking of interest for the loan of money is too clear to admit of argument.

When the common law was first modified in England by statute so as to legalize the charging of a limited rate of interest; the taking of more than the maximum allowed was expressly prohibited and a contract for more was expressly declared to be void, both as to principal and interest. That remained the law from 1545, with the exception of a short interval, until 1714, when the statute of 12 Anne c. 16 was enacted, and remained the law of England until 1854, when it was repealed. All of these statutes differ from our statute in that they declared void contracts which stipulated for a higher rate of interest than the maximum fixed by the statute, and expressly prohibit the lender from taking more than that maximum, whereas our statute has no prohibitory language and expressly declares that if a greater rate of interest than the sanctioned maximum is contracted for, the contract shall not, by reason thereof, be void.

It seems clear to us, and no one has contended otherwise, that section 7053, which we have set forth above, defines fully the rights and liabilities of the parties to usurious contracts in suits upon the contract, and if different rights and liabilities existed at common law, they have been superseded by our statute on the subject. In other words, in a suit upon a contract for the payment of interest claimed by the defendant to be usurious, section 7053 contains all the law applicable to the controversy.

Does it likewise supersede the common law applicable to a suit to recover usurious interest after full performance of the contract?

Section 7053 was enacted in 1931 by Act 137. It superseded and in effect repealed section 3588, Revised Laws Hawaii 1925 (§ 1483, Civ. Code 1858-1859), which provided that "No action shall be maintained in any court of the Territory to recover a higher rate of interest than one per cent. per month, upon any contract made in the Territory," and substituted therefor the provisions of the present section 7053. For the period from 1859 to 1931 the applicable provisions of our usury statute consisted of the above-quoted section and a section identical with section 7052 of the present statute. The effect of those two sections upon a usurious contract was determined by this court in *Schnack* v. *Hare*, 11 Haw. 747, 748, where it was said that "Our statutes clearly relate to the recovery of interest only. They do not avoid the entire contract because a usurious rate of interest is charged. * * * It is true that principal and interest are combined in one sum in the note in question, but they are separable."

We have no decision of this court on the question of whether or not a borrower who has fully performed a usurious contract could maintain an action to recover the usury, either under the present statutes or under the statutes in force prior to the 1931 amendment.

Counsel for plaintiff has argued that "If the effect of our statute is to make the contract to pay usury void or illegal as was so clearly held in *Schnack* v. *Hare,* then our statute is no different from those many others cited in the court's decision." This argument overlooks the fact that one section of the statute construed in *Schnack* v. *Hare, supra,* was in effect repealed in 1931 and section 7053 was substituted for the repealed section. This marked the first time that our legislature undertook to declare the legal

effect of a contract to pay a higher rate of interest than the sanctioned maximum.

Plaintiff argues in effect that since the statute does not expressly deal with the question of the recoverability of usurious interest voluntarily paid (by which is meant paid pursuant to a contract), the common law rule on that question is in force here. The phrase "except as otherwise expressly provided," found in the statute adopting the common law, with special emphasis on the word "expressly," is relied upon by plaintiff, his argument being that since our usury statute does not *expressly* deal with the question of the recoverability of usurious interest, said statute has no effect on that question. But, as said by this court in *Dole* v. *Gear*, 14 Haw. 554, 561, and quoted with approval in *Fung Dai Kim Ah Leong* v. *Lau Ah Leong*, 27 F. (2d) 582, "The common law consists of principles and not of set rules. It therefore admits of different applications under different conditions. Moreover, by the terms of our statute it is to be ascertained by American as well as by English decisions. In *Morgan* v. *King*, 30 Barb. 9, the court, in construing a somewhat similar statute, said (at p. 13) : 'The adoption of the common law, in the most general terms, by the government of any country, would not necessarily require or admit of an unqualified application of all its rules, without regard to local circumstances, however well settled and generally received those rules might be. Its rules are modified upon its own principles, not in violation of them' and (at p. 14) 'when it is said that we have in this country adopted the common law of England, it is not meant that we have adopted any mere formal rules, or any written code, or the mere verbiage in which the common law is expressed. It is aptly termed the *unwritten law* of England; and we have adopted it as a constantly improving *science,* rather than as an *art*; as a system of *legal logic,* rather than as a *code* of *rules.* In

short, in adopting the common law, we have adopted its fundamental principles and modes of reasoning, and the substance of its rules as illustrated by the reasons on which they are based, rather than by the mere words in which they are expressed.'"

The question then is, has our statute (§ 7053) rejected the principle underlying the common law rule permitting a borrower to recover the excess interest paid? If recovery at common law was based upon the fact that a contract to pay usury is void, then the declaration of our statute that "If a greater rate of interest than one per centum per month shall be contracted for, the contract shall not, by reason thereof, be void," certainly rejects the common law principle upon which recovery was based.

In *Gross* v. *Coffey*, 111 Ala. 468, 475, 20 So. 428, the court said: "At common law such recovery was allowed, and in many of the States, the action is sustained. The ruling, however, at common law, and in these States except when their statutes expressly or impliedly authorize this action, goes upon the theory that a contract to pay usury is illegal and void, and not voidable merely; and the main difference between the statutes in the States referred to and our own, lies in the fact that they either in terms declare, or have been construed and held to declare, such contracts absolutely void, while the statutes of Alabama do not so declare, but only provide that an usurious contract cannot, when the objection is properly taken to it, *be enforced* in respect of the usury or interest, but may be as to the principal, and have uniformly been held to render such contracts to that extent voidable at the election of the payor, but not in and of themselves illegal and void."

An Alabama statute not involved in *Gross* v. *Coffey*, declares contracts made in Jefferson county for the payment of interest at a usurious rate invalid and void. In *Cooledge* v. *Collum*, 211 Ala. 203, 204, 100 So. 143, the

court in considering a case for the recovery of usurious interest voluntarily paid on a contract, made in Jefferson county, said: "Contracts for the payment of interest upon the loan of money at a higher rate than 8 per cent. per annum are usurious and cannot be enforced, except as to the principal under our statute. Sections 4623 and 4619, Code 1907. The contracts are not invalid and void, but voidable as to the usurious interest and valid and legal as to the principal; and usurious interest paid on such contracts cannot be recovered in an action of assumpsit, without an express promise to repay it. Code sections supra; Gross v. Caffey [sic], 111 Ala. 468, 20 South. 428. However, a different principle applies to contracts for the payment of interest upon a loan of money at a usurious rate made in Jefferson county in violation of the Act of 1900-01, p. 2685. Such contracts are invalid and void as to the principal and usurious interest. Section 5 of the act provides that all contracts for the loan of money made in violation of this act shall be invalid; and section 8 of the act declares that any contract made for the loan of money in violation of this act shall be void. Any usurious payments made on such contracts, in excess of the principal and legal interest may be recovered in an action of assumpsit, money had and received, without an express promise to repay it."

*Harper* v. *Middle States Loan, Bldg. & Const. Co.*, 55 W. Va. 149 (1904), 46 S. E. 817, 821, one of the cases cited by the circuit court in support of the conclusion that interest in excess of that sanctioned by the statute is not recoverable in the absence of a statute prohibiting the taking of usurious interest or declaring usurious contracts void, in whole or in part, presents an interesting discussion of the requisite statutory provisions for recovery of usurious interest when the contract has been fully performed.

In contrasting the statutes of West Virginia and those of Virginia the court said:

"The present Virginia statute prescribing the rate of interest does not make the contract void in express terms, as does section 5 of chapter 96 of our Code of 1899. It says all contracts and assurances for the loan or forbearance of money or other thing at a greater rate of interest than 6 per cent. 'shall be deemed to be for an illegal consideration as to the excess beyond the principal amount loaned or forborne.' Code Va. 1887, § 2818. Our statute says they 'shall be void as to any excess of interest agreed to be paid above that rate and no further.' Under many of the decisions, the Virginia statute would be construed as giving no right of recovery, because it does not make the contract void to any extent, but only unenforceable, in consequence of which the usurer does not take that which is forbidden by law. But our statute declares the contract void as to the excess, and statutes which do that are generally construed as prohibiting the taking of the excess, and thereby laying the ground for an action to recover it back. The difference seems to be material, for the revisers of 1849, in their report, recommended that the statute be made to declare that the contract, as to the excess, should be deemed to be for an illegal consideration, and not void; giving their reason for it as follows: 'It will be perceived that by the present chapter we propose, in accordance with the English statute of 5 & 6 Will. IV, c. 41, § 1, instead of making the contract void to declare that it shall, as to the excess, be deemed to be for an illegal consideration. If an illegal contract be executed or performed, and both parties are in pari delicto, the general rule is that no action lies to recover back money paid under it. Chitty on Contracts, 499. By the section to which this note is appended, we propose to allow a recovery back.' The note was appended to a different section expressly giving a right of action for

120

the excess, without which, in the opinion of the revisers, no recovery could be had if the contract, as to the excess, was one standing on an illegal consideration." (See also *Blain* v. *Willson,* 32 Neb. 302, 49 N. W. 224; *Cornell* v. *Smith,* 27 Minn. 132, 6 N. W. 460; *Van Vleet* v. *Sledge,* 45 Fed. 743; *Fenton* v. *Markwell & Co.,* 52 P. [2d] 297; *Hadden* v. *Innes,* 24 Ill. 382; *Ransom* v. *Hays, Garn.,* 39 Mo. 445; *Crosby* v. *Bennett,* 7 Metc. [Mass.] 17, and *Nicholls* v. *Skeel,* 12 Iowa 300.)

But counsel for plaintiff argues that the portion of the contract by which the borrower agrees to pay the excess over the maximum rate prescribed by the statute is separable from the rest of the contract; that the statute (§ 7053) merely saves that portion of the contract for the repayment of the principal sum loaned from being void and that the contract to pay a greater rate of interest than one per cent per month, being separable from the contract to repay the principal, is void notwithstanding the declaration of the statute that "If a greater rate of interest than one per centum per month shall be contracted for, the contract shall not, by reason thereof, be void." While we agree with counsel that the contract to pay interest is separable from the contract to repay principal, we are unable to agree that the language quoted is susceptible of the interpretation placed upon it by plaintiff's counsel. The contract to pay interest is the subject with which the quoted provision deals and it alone is the contract to which the language refers. To hold otherwise we would have to disregard the plain and unambiguous language used by the legislature. We would also have to credit the legislature with having enacted a useless law. This court long ago decided that under the statute in force before the 1931 amendment the contract to repay the principal was valid. (*Schnack* v. *Hare, supra.*) If, therefore, the only effect of the 1931 Act, which repealed the section denying the

right to maintain an action to recover interest beyond the maximum legal rate, and substituted therefor section 7053, was to save the contract to repay the principal from being void, the legislation accomplished nothing.

The Nebraska statute involved in *Blain* v. *Willson, supra,* follows: "If a greater rate of interest than is hereinbefore allowed shall be contracted for or received or reserved, the contract shall not, therefore, be void; but if in any action on such contract proof be made that illegal interest has been directly or indirectly contracted for, or taken, or reserved, the plaintiff shall only recover the principal, without interest, and the defendant shall recover costs; and if interest shall have been paid thereon, judgment shall be for the principal, deducting the interest paid." This statute is essentially the same as section 7053 of our statute. As to the effect of said statute the court said:

"It will be observed that the statute does not provide that, where the borrower has paid usurious interest, he may recover it back in a separate action, but the legislature has in effect said that in an action to enforce a usurious contract, only the principal sum shall be recovered; that the plaintiff forfeits all interest when usury is proven. The meaning of the statute is that the plea of usury can only be set up in a suit upon the usurious contract. The borrower can refuse to pay, and when action is brought against him, he can plead his defense. He cannot pay the usurious interest and then turn around and recover it back."

*Crosby* v. *Bennett, supra,* is authority for the proposition that a usury statute which declares that a contract whereby usurious interest is reserved shall not thereby be rendered void takes away the ground upon which the common law right of recovery was based. That case was an action of assumpsit to recover back money alleged to have

been paid by the plaintiff to the defendant as usurious interest and proceeded on the ground that the money thus received by the defendant was received on an illegal contract and that the plaintiff, therefore, had a right, by the common law, to recover it back, as so much money had and received. On the question here being considered the court, at page 18, said:

"The authorities cited certainly tend to show, that so long as a usurious contract was declared illegal and void, it followed, as a necessary consequence, that money paid thereon was taken illegally, and was oppressively extorted from the borrower, and therefore that this equitable action would lie, to recover it back. But now the Rev. Sts. c. 35, § 2, expressly declare that no contract, whereby usurious interest is allowed, shall be thereby rendered void, and, in order to restrain the taking of usurious interest, the statute goes on to make certain specific provisions; first, to allow a large deduction from the claim of the lender, when the law is resorted to to enforce the performance of such a contract; and secondly, to permit the person who has paid such interest, to recover back three times the amount, by an action of debt or bill in equity, provided such suit be commenced within two years from the payment. See *Sts.* 1783, *c.* 55; 1825, *c.* 143; 1826, *c.* 27. The consideration, that now by law the contract is not void, distinguishes this case from those cited, and takes away the ground upon which they rested."

While the 1835 statutes of Missouri were in force it was assumed, if not held, that a party paying usurious interest could maintain the common law action to recover it. (*Hawkins* v. *Welch,* 8 Mo. 490.) In 1855 the usury statute was materially changed. In *Ransom* v. *Hays, Garn., supra,* the court, in considering the effect of the 1855 statute on the right to maintain such an action, at page 448, said: "Sec. 4 of I R. C. 1855, p. 890, prohibits

the taking of any higher interest than what is specified in the three preceding sections, and section 5 declares that when any action or suit is commenced on any bond, note, mortgage, specialty, agreement, contract, promise or assurance, made in this State, the defendant may in his answer show that a higher or greater rate of interest than ten per cent. (the highest rate allowed by law) was therein agreed for, or received or taken; and that if the answer of the defendant to any such suit shall be sustained by the verdict of a jury, or the finding of the court, the court shall render judgment on such finding or verdict, for the real sum of money, or price of the commodity actually lent, advanced or sold, and interest on the same at the rate of ten per cent. per annum; upon which judgment the court shall cause an order to be made setting apart the whole interest for the use of the county in which the suit is brought, for the use of the common schools and the defendant may recover his costs. In some of the States the law renders the usurious contract wholly and absolutely void, but with us the only effect is to forfeit the interest to the counties for the benefit of the school fund, and which is made to operate as a punishment on the lender for his illegal exaction. No provision is made by which the borrower can recover it back, when he pays it of his own voluntary will. The statute was designed to supersede and modify the common law, and diverts the interest from the parties, and appropriates it to the use of the common schools. * * * The statute does not contemplate the recovery back of unlawful interest once paid on a usurious contract; the law does not make such contract absolutely void; and if the party completely and voluntarily performs his part of the contract, by paying the usurious interest, he is remediless."

The Missouri statute of 1855 differs from our statute in that it "prohibits the taking of a higher interest than

what is specified" in the statute and authorizes judgment for the principal "and interest on the same at the rate of ten per cent. per annum" and an order "setting apart the whole interest for the use of the * * * common schools" whereas our statute does not prohibit the taking of the higher rate but merely authorizes the borrower when sued on the debt contracted to escape the payment of any interest by proving that the contract provides for usurious interest. But, notwithstanding the prohibitory nature of the Missouri statute, it was held that the remedies provided by the statute were designed to supersede and modify the common law and deprive the borrower of the formerly existing common law right to recover usury voluntarily paid.

In *Miller* v. *Ammon,* 145 U. S. 421, 426, the court states the general rule to be "that a contract made in violation of a statute is void; and that when a plaintiff cannot establish his cause of action without relying upon an illegal contract, he cannot recover." The court, however, pointed out that there are exceptions to the general rule based upon a supposed intent of the legislature. Two cases, *Pangborn* v. *Westlake,* 36 Iowa 546, 549, and *Harris* v. *Runnels,* 12 How. (53 U.S.) 79, were cited to illustrate the exception and quoted from as follows:

"In *Pangborn* v. *Westlake,* it was thus stated how the exception should be determined: 'We are, therefore, brought to the true test, which is, that while, as a general rule, a penalty implies a prohibition, yet the courts will always look to the language of the statute, the subject matter of it, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment; and if, from all these, it is manifest that it was not intended to imply a prohibition or to render the prohibited act void, the courts will so hold, and construe the statute accordingly.' And in *Harris* v. *Runnels,* this

court, after noticing some fluctuations in the course of decision, and observing 'that we have concluded, before the rule can be applied in any case of a statute prohibiting or enjoining things to be done, with a prohibition and a penalty, or a penalty only for doing a thing which it forbids, that the statute must be examined as a whole, to find out whether or not the makers of it meant that a contract in contravention of it should be void, or that it was not to be so,' added: 'It is true that a statute, containing a prohibition and a penalty, makes the act which it punishes unlawful, and the same may be implied from a penalty without a prohibition; but it does not follow that the unlawfulness of the act was meant by the legislature to avoid a contract made in contravention of it. When the statute is silent, and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void.' "

Our legislature made it clear by express language that it did not intend by section 7053 to make a contract for a greater rate of interest than one per cent per month void. In fact, it is made clear by the language used that it intended to save such a contract from being subject to the general rule that a contract made in violation of a statute is void. The legislature also made it quite clear by making proof of usury a prerequisite to the remedy provided a borrower that it intended to make a contract for a greater rate of interest than one per cent per month voidable at the election of the borrower, and not void.

Nothing decided in *Helbush* v. *Mitchell*, 34 Haw. 639, is in conflict with our conclusions in this case. That case involved an action on an installment note to which the defendant plead usury. After concluding that the contract embodied in the note was usurious, we applied the remedy given to the borrower by section 7053, Revised Laws Hawaii 1935.

Since it is admitted that the criminal usury statute has no application to the facts of this case, and since the criminal usury statute now prohibits the taking of more than one per cent per month for the loan of money and punishes the taking as a crime, thereby making applicable section 8, R. L. H. 1935, which provides that "Whatever is done in contravention of a prohibitory law is void, although the nullity be not formally directed," we have deemed it at least prudent to state that the decision in this case has no application to cases involving loan contracts which come within the prohibition of the criminal statute in force at the time the usurious interest was taken.

Finding no merit in the exceptions, they are overruled.

*P. Silver* (Cass & Silver on the briefs) for plaintiff-appellant.

*J. R. Cades* (Smith, Wild, Beebe & Cades on the briefs) for defendant-appellee, Discount Corporation.

*C. N. Tavares* (Hewitt & Tavares on the brief) for defendant-appellee, Honolulu Finance & Thrift Co.

### DISSENTING OPINION OF LE BARON, J.

I respectfully dissent.

The court is here called upon to decide the somewhat technical question of whether the remedy afforded a borrower in an action by a lender upon a contract, tainted with usury, under section 7053, R. L. H. 1935, is exclusive and abrogates the borrower's common-law right to bring an action of assumpsit to recover usury or whether the statutory remedy is cumulative only and enlarges the protection given to a borrower at common law.

If section 7053 is to be interpreted as exclusive, an exacting lender can force the borrower as his contractual victim into the payment of the usurious contract with threats to confiscate the borrower's security and by press-

ing legal action if the borrower is ignorant of the law. Under such a construction, once the satisfaction of the contract and the extraction of the usury become *fait accompli,* the matter is ended. Accomplishment and the consummation of the usurer's greed purges him of liability for his unlawful acts. Indeed the exaction of security for a usurious loan with power to sell without resort to legal proceedings guarantees in advance the successful perpetration of usury. The statute under this construction becomes a farce, easily evaded by the clever usurer, who is in effect rewarded for successfully extracting his pound of flesh and penalizes only the clumsy, less expert, and inexperienced usurer. If, on the other hand, the statutory remedy should be regarded as cumulative, the temptation to exact interest in excess of the lawful maximum rate vanishes.

Thus, although the immediate question of whether the statutory remedy should be construed as exclusive or cumulative may be technical, a question of public policy is clearly involved which should transcend technicality.

I am sure my learned associates would not disagree with me that the public interest demands the upholding of ethical standards in business and the tightening of prohibitions against sharpsters. While this policy standing alone is persuasive, it is not the basis of my dissent.

A number of States have usury laws similar to ours. Among such States there is a definite cleavage of authority, many holding that the borrower's statutory remedy is cumulative and some that it is exclusive. (27 R. C. L. 272.) Faced with such a division of authority upon a question that is novel in this jurisdiction, the intention of our legislature in enacting section 7053 is of primary concern.

In the House Journal (1931) of the Sixteenth Legislature of Hawaii, at page 388, it appears from the report of the committee on judiciary, to which the bill was referred

after its introduction in the house of representatives, that our section 7053 was designedly patterned after and copied from a usury statute of the State of Washington. It is, therefore, logical to suppose that our legislature in enacting section 7053 intended thereby to produce and perpetuate the result already achieved by the Washington statute. It is a familiar rule of construction, often invoked by the courts, that the adoption of a statute from another jurisdiction carries with it the interpretation placed on that statute at the time of its adoption by the courts of the jurisdiction from which it was borrowed. (*Carter* v. *Gear*, 16 Haw. 242, *aff'd* 197 U. S. 348, 49 L. ed. 787; *Middleditch* v. *Kalanianaole*, 18 Haw. 272; *Territory* v. *Ota, ante*, p. 80. A comparison of section 7053 with section 6255, Rem. & Bal. Code (Wash.) (L. '99, § 7, p. 129. Cf. L. '95, § 5, p. 350) (Remington's Comp. Stats. [Wash. 1922] § 7304), from which section 7053 was copied, reveals that our section preserves every feature of the original Washington statute which is in any way material to the principle of construction here involved.

In *Lee* v. *Hillman*, 74 Wash. 408, 133 Pac. 583, 35 Ann. Cas. 1915A 759, L. R. A. 1918B 581, the Washington statute, section 6255, *supra*, was construed in 1913 and the exact question now before this court was then determined. The Washington court held that the section provided merely a cumulative remedy and did not extinguish the common law remedy of assumpsit, saying: "The argument of counsel upon both sides of the cause proceeds upon the assumption that the only question here involved is: Does the law recognize the right of one who has paid usurious interest to maintain a civil action, as plaintiff, to recover any portion of the amount so paid, or does it withhold from him all remedy except that which our statute gives by way of defense in an action brought to recover the principal upon which he has paid such usurious interest? * * *

"The decisions of the courts are, at least seemingly, in serious conflict as to the right of one who has paid usurious interest to recover the same by civil action as plaintiff, especially under usury statutes which prescribe a remedy by way of defense to an action prosecuted against the debtor to enforce collection of the principal. * * * In the text of 22 Encyc. of Pl. & Pr. at page 482, it is said: 'By the weight of authority the common-law remedy of assumpsit to recover back payments of usury is not abrogated by statutes providing other remedies for the recovery of such payments or for the recovery of penalties and forfeitures; but in some of the states there are decisions to the contrary.'

"* * * We are unable to see that a debtor having money or property thus unlawfully taken from him is in any different situation, so far as his right to have the same restored is concerned, than as if it were taken from him in some other unlawful manner. Nor can we see that his right to restoration is any different because the taking is made unlawful by statute instead of by the common law. * * * We are of the opinion that, at least in so far as money or property is exacted in payment of interest above the highest rate permitted by our usury statute, the same may be recovered by the payer thereof in a civil action prosecuted by him as plaintiff."

Such is the judicial construction of the original statute by the leading Washington case, which had remained as the unimpeached law in the State of Washington for some eighteen years prior to the time that this statute which had been thus construed, was copied and adopted by our legislature in 1931. It had also been cited with approval and confirmed by the supreme court of the State of Washington before the enactment of section 7053 (*Holland Co.* v. *Aitken,* 98 Wash. 107 [1917], 167 Pac. 109; *Hopgood* v. *Miller,* 107 Wash. 449 [1919], 181 Pac. 919), and is still

the law of that State (*Trautman* v. *Spokane Security Finance Corp.*, 163 Wash. 585 [1931], 1 P. [2d] 867; *Edwards* v. *Surety Finance Co.*, 176 Wash. 534 [1934], 30 P. [2d] 225).

In addition, *Lee* v. *Hillman, supra,* considered the line of authorities to the contrary of which *Blain* v. *Willson,* 32 Neb. 302, 49 N. W. 224, is the leading case and which authorities are relied upon by the majority and expressly dismissed them in the following language: "This view of the right to recover is opposed by other decisions, of which probably that of *Blain* v. *Willson,* 32 Neb. 302, 49 N. W. 224, may be regarded as the leading case. We are of the opinion, however, that the better rule is that adhered to by the authorities we have noticed."

Nor, as pointed out above, are the Washington decisions the only authorities which support this interpretation of the borrower's statutory remedy. A comprehensive survey of the authorities reveals that others concur. (*Baum* v. *Thoms,* 150 Ind. 378, 50 N. E. 357, 65 Am. St. Rep. 368; *Wheaton* v. *Hibbard,* 20 Johns. [N. Y.] 290, 11 Am. Dec. 284; *Bexar Building and Loan Ass'n* v. *Robinson,* 78 Tex. 163, 14 S. W. 227, 22 Am. St. Rep. 36, 9 L. R. A. 292; *Westman* v. *Dye,* 214 Cal. 28, 4 P. [2d] 134; *Munford* v. *McVeigh,* 92 Va. 446, 23 S. E. 857; *Douglas* v. *Klopper,* 107 Cal. App. 765, 288 Pac. 36; *Wood* vs. *Lake,* 13 Wis. 94, 106; *Willie* vs. *Green,* 2 N. H. 333; *Fay* v. *Lovejoy,* 20 Wis. 424; *The First National Bank* v. *Plankinton,* 27 Wis. 177, 9 Am. Rep. 453; *Scott* vs. *Leary,* 34 Md. 389; *Philanthropic Building Association* v. *McKnight,* 35 Pa. 470; *Thomas* v. *Shoemaker,* 6 W. & S. [Pa.] 179; *Damico* v. *Mayer,* 158 Atl. 847; *Jones* v. *Dickerman,* 114 Cal. App. 357, 300 Pac. 135; *Sawyer* v. *Hass,* 79 Ind. App. 192, 137 N. E. 622; *Davis* v. *Garr,* 55 Am. Dec. n. 399, 400; 2 Encyc. Plead. & Prac. 1020, note on usury; 66 C. J. § 264, p. 284, and notes 12 and 15 for other authorities.)

The underlying rule of construction was well-expressed in 1778 in an English case, *Browning* v. *Morris,* Cowp. 790, 792, 98 Eng. Reprint 1364, and in 3 Parsons Contr. 128, where it is said: "The distinction has been taken between statutes enacted on general grounds of policy and public expediency in which each party violating the law is *in pari delicto* and entitled to no assistance from a court of justice, and those laws enacted to protect weak or necessitous men from being overreached, defrauded, or oppressed, in which event the injured party may have relief extended to him, and the whole purport and reason, both of the law of usury and of the great mass of decisions under it, indicate that the lender on usury is regarded as the oppressor and the criminal, and the borrower as the oppressed and injured."

Thus, not only does strong public policy dictate that the appellant be allowed to bring his action to recover usury exacted from him but the weight of authority favors it as well as being indicated by legislative intent. All of which, taken together, should be controlling upon this court as an interpretive rather than as a lawmaking body.

Lord Mansfield in two short sentences gave the proper approach to the question of allowing a borrower to bring an action to recover usury in *Smith* v. *Bromley,* as quoted in *Jones* v. *Barkley,* 2 Dougl. (K. B.) 685, 99 Eng. Reprint 434, 444 (1781), as follows: "Upon the whole, I am persuaded it is necessary for the better support and maintenance of the law, to allow this action; for no man will venture to take, if he knows he is liable to refund. When there is no temptation to the contrary, men will always act right."

These words are just as wise and perhaps just as cynical today in the twentieth century as they were when they were written in the eighteenth. To my mind, the majority opinion is overtechnical and not only does violence to the

132

sound public policy as enunciated above, but also, in attempting to ascertain the intention of the legislature, disregards well-established rules long followed by this court in the construction of statutes.

The exceptions should have been sustained.